RENA A. DECATUR & others *vs.* AUDITOR OF THE CITY OF PEABODY & others.

Essex.  December 9, 10, 1924. — January 28, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*School and School Committee.  Municipal Corporations*, Officers and agents, Municipal finance.  *Mandamus.*

The provision of G. L. c. 71, § 34; c. 4, § 7, cl. 34, that cities "shall raise by taxation money necessary for the support of public schools as required by this chapter," is mandatory and makes observance of the effectiveness and validity of contracts of school committees, increasing salaries of teachers instructing in subjects required to be taught by G. L. c. 71, imperative upon the municipalities and not subject even to the limitations of the provisions of law as to the budget, G. L. c. 44, §§ 32, 31.

The same rule applies with regard to contracts made by school committees with superintendents of schools as to their salaries.

*Whether* such rule applies as to contracts by school committees made with truant officers, clerks in the office of the school department, and school nurses with regard to their salaries, was not determined.

Teachers in the public schools of Peabody sought by a petition for a writ of mandamus to require the auditor, the treasurer and the mayor of the city to perform the necessary acts of approval of payrolls, issuance and countersigning of treasury warrants and payment thereof which would cause to be paid an increase of salaries voted to the petitioners by the school committee.  The case was heard upon an agreed statement of facts, no question being raised by the parties as to the form of remedy or procedure.  All parties desiring a decree upon the merits, this court treated the case on that footing and specifically *stated* that it was not

intended thereby to enlarge the remedy by mandamus beyond the established bounds.

*It was stated,* that it was not determined that the school committee had power to disregard the provisions of G. L. c. 44, § 31, and involve the city in debt in excess of appropriation, a different remedy being set forth in G. L. c. 71, § 34.

In the case above described, while stating the requirement of law that municipalities must conform in their financial arrangements to the requirements of contracts as to salaries of teachers in the public schools made by school committees under G. L. c. 71, § 38, this court *observed* that an appropriation unexpended when the case first was submitted on the agreed facts obviously must have been expended while the case was under advisement, so that the municipal authorities could not at the time of the rescript be required to pay the money for the increased salaries, no further appropriation then having been made; and the petition therefore was dismissed.

PETITION, filed in the Supreme Judicial Court for the county of Essex on July 3, 1924, by seventy-eight principals and teachers in the public schools of Peabody, the superintendent of schools, the truant officer, the school nurse and two clerks in the school department for a writ of mandamus to require the auditor, the treasurer and the mayor to perform the necessary acts of approval of payrolls, issuance and counter signature of treasury warrants and payment thereof, which would cause to be paid an increase of salaries voted to the petitioners by the school committee.

There was an agreed statement of facts. Material facts agreed upon are described in the opinion. The case was reserved by *Carroll,* J., for determination by the full court upon the petition, answer and agreed statement of facts.

*S. H. Donnell,* for the petitioners.

*James J. Ronan,* (*H. P. Farnum* with him,) for the respondents.

RUGG, C.J. The great question in this case is whether, when the school committee of a city other than Boston has voted to increase salaries of teachers in the public schools according to its own conceptions of the public needs, and has transmitted the estimate of the annual expenses of the school department based on such increase to the mayor in conformity to the budget requirements of G. L. c. 44, § 32, the mayor and city council are bound to provide appropriations based on such increase. Stated more concisely the question is,

whether the ultimate power to establish the salaries of teachers in the public schools, giving instruction in the branches required to be taught by G. L. c. 71, is vested in the school committee or in the mayor and city council of cities outside of Boston.

The pertinent facts are that Peabody was incorporated as a city by Spec. Sts. 1916, c. 300. The form of that charter in its essentials is similar to Plan B of G. L. c. 43. Pursuant to previous votes authorizing increases in salaries of teachers, the school committee early in January, 1924, caused individual contracts to be signed in its behalf with each of the petitioners to serve the city at the increased salary. Thereafter, the school committee transmitted to the mayor an estimate in detail of the expenses of the school department for 1924, which included an item for increases in the salaries of the teachers adequate to pay the additional amount required to pay salaries at the increased rate. The mayor refused to include in his annual budget the amount of increases in salaries thus requested by the school committee. The budget in this respect as submitted by the mayor was approved by the city council. The present proceeding is brought to compel the appropriate city officers to approve payrolls, to draw warrants and to make payments in accordance with the contracts of the school committee for the increase of salaries.

It has been argued that, since the public schools have been kept open in Peabody during the school year here involved twenty days longer than the period required by G. L. c. 71, § 1, the salaries as fixed by the school committee must be paid, because the city council might have ordered the schools closed for that twenty days. It does not appear that there would have been substantial saving in the expenses of the public schools if that course had been attempted. The written contracts made by the school committee with the teachers call for an annual salary. It cannot be presumed or inferred on this record that a reduction by twenty days in the school year would have resulted in any reduction of expense. Moreover, it is open to doubt whether under the present phrase of the statute the time during which the

public schools shall be kept open beyond the mandate of the statute may not be for the school committee alone to determine.   Compare G. L. c. 71, § 37, *Batchelder* v. *Salem,* 4 Cush. 599, 603, *Charlestown* v. *Gardner,* 98 Mass. 587, 590.

Before the enactment of St. 1913, c. 719, entitled " An Act relative to municipal indebtedness " and now embodied in G. L. c. 44, entitled " Municipal Finance," the powers of the school committee had been settled by numerous decisions, which are collected in *Leonard* v. *School Committee of Springfield,* 241 Mass. 325.   It there was said at pages 329, 330, in summarization of those decisions, " The school committee is an independent body, entrusted by law with broad powers, important duties and large discretion.   The obligation to select and to contract with teachers implies examination as to their fitness and of necessity carries with it the authority to fix the compensation to be paid.   It would be vain to impose upon the school committee responsibility for excellence of the instruction to be afforded to pupils and to deprive them of the power to determine the salaries of teachers.   There is much of self sacrifice and devotion to the common welfare among teachers in the public schools.   But, nevertheless, the character of service to be obtained depends to a considerable degree upon the compensation offered. The full and appropriate discharge of their duties by school committees requires ample power to select competent teachers.   The Legislature, moved by obvious and strong reasons, has vested the school committee with the absolute and unconditional power to agree with teachers upon their salaries  to the end that high standards may be secured and maintained in the education of the youth of the Commonwealth.   In the exercise of their honest judgment on the question of salaries for teachers, the school committee are not restricted to the amounts appropriated.   For the time during which schools must be kept by law the municipalities must pay such salaries as may be fixed by the school committee.   To take this power from the school committee would break up the long established system of our law in regard to public schools.   The only supervision which the city council or towns can exercise over the school committee is to vote to

close the schools after they have been kept the length of time specified by the law."

In dealing with municipal finance, by St. 1913, c. 719, the General Court provided in substance and effect that in all cities except Boston there shall annually be prepared and presented for consideration by the legislative department a budget which shall consist of an itemized and detailed statement of the money required for the several municipal departments and other city charges. The legislative department of the city may reduce or reject any item, but cannot increase any item nor add new items. It also was provided that no department should incur liabilities in excess of the appropriation made in the budget as finally established, with exceptions not here material. All acts and parts of acts inconsistent with the municipal indebtedness act were repealed by § 22 of that act.

The purpose of that act in general was to set rigid barriers against expenditures in excess of appropriations, to confine the borrowing of money and the issuance of municipal bonds within strict limits and to put all cities upon a sound financial basis as far as possible by legislation. That statute was new in kind with reference to the fiscal management of cities. It ought to be interpreted so as to effectuate its highly salutary and important purpose. *Flood* v. *Hodges*, 231 Mass. 252.

The main provisions of the municipal indebtedness act are in G. L. c. 44, §§ 32 and 31. All the previously existing provisions of the statutes respecting school committees and their powers were reënacted in substance in G. L. c. 71. The special and hitherto unlimited power of the school committee to contract with teachers is in § 38, and the committee's general authority over schools, in § 37. These provisions are in almost the same words as those long familiar in our statutes.

There are thus in the General Laws two provisions, which, if treated as detached and separate enactments, seem to be contrary one to the other. The chapter on municipal finance appears to give to the mayor and legislative department of the city absolute power over the budget, with complete and

exclusive control over appropriations, and thus to require every municipal department to yield to its determination as to the amount of money available for any public expenditure. The chapter relating to public schools appears to vest in the school committee complete and exclusive control over the salaries to be paid to teachers in the public schools without being required to consult with any other public board.

These respective provisions were combined in the revision of statutes known as General Laws. There is no indication of legislative thought that there was any inconsistency or repugnancy between the several statutes thus consolidated. There is every presumption that this body of statute law was intended to be consistent and harmonious. It must, if reasonably practicable, be interpreted in furtherance of that intention. *Brooks* v. *Fitchburg & Leominster Street Railway*, 200 Mass. 8, 18.

The system of public schools and the powers of the school committee with reference to them are not the result of any single or recent statute but have been the slow growth of our institutions beginning in colonial times, extending through the provincial period and flourishing as one of the most cherished of all our institutions under the Constitution. The existing provisions of law must be construed and applied in view of these historical considerations.

A statute, such as that dealing with municipal finance, commonly carries with it an implication that all other provisions of law are to yield to its terms. Its general scope and its main purpose are directed toward uniformity, clarity and economy in the use of public funds. Several commissions have been appointed in recent years to study municipal finance and to report to the General Court. The importance attributed to the subject is thus accentuated. All municipal activities must be supported out of the public treasury. They are all dependent upon appropriations made by the legislative department of cities. They naturally would all be put upon the same footing.

One consideration and one alone puts the school committee with respect to salaries of teachers upon a basis different from

that of other municipal departments.   There is contained in
G. L. c. 71, § 34, a provision long in our statutes, in these
words: " Towns shall raise by taxation money necessary
for the support of public schools as required by this chapter."
The word " towns " in this section includes cities.   G. L. c.
4, § 7, cl. 34.   *Lynn* v. *County Commissioners,* 153 Mass. 40.
The words of § 34 of c. 71 are words of command and not of
choice.   They convey a positive and inflexible legislative
command.   *Rea* v. *Aldermen of Everett,* 217 Mass. 427, 430.
*Milton* v. *Auditor of the Commonwealth,* 244 Mass. 93, 94.
One of the requirements of c. 71, as already pointed out, is
that the salaries to be paid to the teachers in the public
schools shall be determined by the school committee.   The
power to contract with teachers in the public schools and to
fix their salaries for many years has been conferred by the
statutes and has received definite construction.   That con-
struction has been that the power is vested absolutely in the
school committee.   The obvious reason was that suitableness
of teachers must depend to a large degree upon the amount
of compensation which can be offered, and that, since the
general charge and superintendence of schools is vested in
the school committee, it cannot be held to a strict perform-
ance of its duties without corresponding authority.   More-
over, the power to contract with teachers imports the power
to agree upon compensation.   *Batchelder* v. *Salem,* 4 Cush.
599.   *Leonard* v. *School Committee of Springfield,* 241 Mass.
325.   The requirement that the school committee shall
" contract with the teachers of the public schools " with the
necessary implication of fixing salaries, is as definite as that
requiring high schools, evening schools, free text-books and
the minimum number of days of school instruction.   Com-
pare §§ 1, 4, 18, 19, 48, of G. L. c. 71.   It is not practicable
to differentiate between these several requirements of that
chapter and say that one is mandatory and another merely
directory or permissive.   It is clear that the design of § 34
was to make the observance of certain requirements of G. L.
c. 71, imperative upon municipalities and not subject even
to the limitations of the provisions of law as to the budget.
This compulsion imposed by the General Court is peremptory

and unequivocal. It is something more than the simple permission to one board of public officers to make contracts, or to fix salaries. Those are to be found in other statutes. See, for example, G. L. c. 111, § 27. All such general provisions are subject to appropriations made under the provisions of the budget law. With reference to public schools there is both the power in the school committee and the express legislative mandate to the municipality to " raise by taxation " the necessary money. It follows from the provisions of said § 34, touching the public schools, that it is the duty of those framing the budget under G. L. c. 44, § 32, to conform to G. L. c. 71, § 38, and to provide for the salaries of teachers in the public schools as voted by the school committee.

It is plain from the provisions of G. L. c. 71, § 59, that the power of the school committee over the salary of the superintendent of schools is the same as over salaries of teachers. See in this connection as to compensation of truant officers, G. L. c. 77, § 12.

The question whether clerks in the office of the school department and school nurses stand upon the same footing as school teachers, although susceptible of being presented on this record, has not been argued. See, as to school nurses, G. L. c. 40, § 5, cl. 21, and St. 1921, c. 357. The facts are not presented with sufficient fullness to enable us to pass upon that question. We do not decide it. The parties have treated the case as involving teachers' salaries, and we have done the same. It has been assumed also that all the petitioners pursuant to their contracts taught subjects required to be taught by G. L. c. 71, and that none of them taught exclusively subjects not so required.

All parties have presented the case on the theory that mandamus is the proper remedy. *Attorney General* v. *Suffolk County Apportionment Commissioners,* 224 Mass. 598, 609, 610, and cases there collected. No question has been raised as to form or remedy, procedure or parties. Avowedly, a decision on the merits is desired by everybody in interest. We have treated the case on that footing without thereby intending to enlarge the remedy by mandamus beyond the

established bounds. *Daly* v. *Medford*, 241 Mass. 336, 339, and cases there collected. *City Council of Newburyport* v. *Mayor of Newburyport*, 241 Mass. 575.

We do not go so far as to hold that the school committee has power to disregard the provisions of G. L. c. 44, § 31, and involve the city in debt in excess of appropriation. A different remedy is set forth in G. L. c. 71, § 34, for failure to raise money necessary for the support of public schools as required by said c. 71. The question presented by this record has been one of genuine difficulty about which municipal officers of integrity and zeal for the public welfare well might and doubtless have differed. But it cannot be assumed that any mayor and city council, when the law has been interpreted, would fail to make the necessary appropriations. *Police Commissioner of Boston* v. *Boston*, 239 Mass. 401, 409.

The agreed facts show that at the time of the filing of this petition the appropriation unexpended was sufficient to meet the increase in salaries of teachers then accrued. The case was not argued at the bar of this court until December, 1924, and it was not practicable to reach a decision until after the end of the fiscal year, which was the thirty-first day of that month. It is manifest from the agreed statement of facts that out of the appropriation actually made for schools for the year 1924 enough cannot now remain to meet the increases in teachers' salaries, because it must be assumed that schools have been kept in session in the city of Peabody as usual. Therefore it is not the official duty of the respondents at present to pay out money in the circumstances here disclosed. The petition must be dismissed.

*Petition dismissed.*