FRANK P. CALLAHAN *vs.* CITY OF WOBURN
(and forty companion cases [1]).

Middlesex.     February 7, 1940. — June 19, 1940.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Civil Service.   School and School Committee.   Municipal Corporations,*
By-laws and ordinances, Municipal finance, Officers and agents.
*Woburn.   Contract,* What constitutes.

Ordinances of the city of Woburn establishing salaries of policemen and
firemen were valid notwithstanding noncompliance with G. L. (Ter.
Ed.) c. 40, § 32, as appearing in St. 1933, c. 185, § 1; following *Forbes*
v. *Woburn, ante,* 67.

The statutory power of the school committee of a city to contract on be-
half of the city to employ teachers and pay them salaries was not limited
to the making of contracts that would run only during the financial
year of the city nor by the amount appropriated by the city for its fiscal
year: notwithstanding.G. L. (Ter. Ed.) c. 44, § 31, the committee
might in good faith make enforceable contracts with teachers and a
superintendent of schools for a school year to begin in a September
and to end in the succeeding August although before the end of the
fiscal year on December 31 an appropriation for the payment of salaries
in that department was exhausted.

Evidence as to election of teachers in a city for one year and at tenure
and of their serving accordingly, without contracts in writing or formal
acceptance by the teachers of their election, warranted findings that
contracts of employment were made.

Public school teachers, a superintendent, and employees of the school de-
partment in the civil service could not maintain actions of contract
against the municipality employing them to recover balances of their
lawfully fixed salaries or wages, unpaid because of insufficiency of ap-
propriations for the school department; the sole remedy for such in-
sufficiency was under G. L. (Ter. Ed.) c. 71, § 34.

---

[1] The forty companion actions were brought against the same defendant
by Daniel J. Canniff, Charles W. Carter, Harry F. Clinton, John E. Connell,
Michael J. Cuneo, Frank H. Daley, Jeremiah C. Donovan, Patrick H. Flaherty,
William H. Foley, Joseph E. Haley, Thomas H. Hammond, Jacob F. Kohler,
John H. McGann, James N. McGovern, John A. McMaster, William E.
Mulrenan, John P. Quigley, Arthur E. Tibbetts, Timothy F. Ring, Charles R.
McCauley, Lawrence M. Brophy, William H. Sweeney, John F. McCarthy,
Joseph J. Dion, Joseph E. Doherty, Arthur A. Fay, David W. Folan, Harold
F. Kelley, John J. Kelley, William F. Kenney, John M. Power, Edward H.
McDonald, Alonzo B. O'Brien, Edward E. Reil, George E. Reil, William E.
Rooney, James F. Tenney, Charles B. Walsh, Edward D. Walsh, Timothy
F. Ring, respectively.

FORTY-ONE ACTIONS OF CONTRACT. Writs in the Fourth District Court of Eastern Middlesex dated variously February 3, 6, 7, and 14, 1939.

On removal to the Superior Court, the actions were heard together by *Williams*, J., who found for each plaintiff. The defendant alleged exceptions.

The only contention by the defendant in the first and second groups of actions described in the opinion was that ordinances fixing the salaries of the plaintiffs of those groups were invalid by reason of noncompliance with the provisions of § 32 of G. L. (Ter. Ed.) c. 40 in the form appearing in St. 1933, c. 185, § 1.

As to the third and fourth groups of actions, the contentions of the defendant in substance were that the evidence did not warrant a finding that contracts of the city with those plaintiffs were in existence; that the city could not enter into contracts of employment, payments under which would carry into the succeeding financial year, where no appropriation had been made providing funds for the payment of the whole contracts; that the school committee could not bind the city upon contracts of employment with teachers or other employees in excess of the appropriation existing at the time the contracts were made; and that those plaintiffs' remedy was not by actions of contract but solely under G. L. (Ter. Ed.) c. 71, § 34.

*J. Gorassi*, City Solicitor, for the defendant.

*J. E. Henchey*, (*J. H. McLaughlin* with him,) for the plaintiffs.

Cox, J. These forty-one actions of contract to recover salaries or wages of employees, alleged to be due from the defendant city for the last part of 1938, were tried by a judge of the Superior Court sitting without jury. The declarations in two of the actions contain several counts in which the plaintiff Ring seeks to recover not only the salary alleged to be due him, but also salaries alleged to be due to others who have assigned their claims to him. No issue is raised as to the validity of these assignments, and the assignors, together with the other plaintiffs, will hereinafter be referred to as plaintiffs. The judge made certain findings,

gave and denied certain requests for rulings, and found for each plaintiff. The defendant's exceptions are consolidated in one bill.

The plaintiffs may be divided into four groups: (1) policemen, including the chief of police; (2) firemen; (3) school teachers and the superintendent of schools; and (4) employees of the school department.

1. All of the plaintiffs in groups (1) and (2) are within the protection of the civil service, and the only contention of the defendant as to their right to recover is that the ordinances of the defendant, establishing the salaries in question, are invalid as not having been adopted in compliance with the provisions of § 32 of G. L. (Ter. Ed.) c. 40, in the form appearing in § 1 of St. 1933, c. 185. This contention is disposed of adversely to the defendant by the decision in *Forbes* v. *Woburn, ante,* 67, where it was held that the charter of Woburn (St. 1897, c. 172, §§ 18, 25) makes the provisions of G. L. (Ter. Ed.) c. 40, § 32, and St. 1933, c. 185, inapplicable to this defendant. Although this disposes of the defendant's contention, it may be well to point out that the facts found bring the cases of the plaintiffs in groups (1) and (2) within the principle stated in *Barnard* v. *Lynn,* 295 Mass. 144, and they are entitled to recover despite the fact that there was no appropriation out of which their present claims could be paid. *Barnard* v. *Lynn,* 295 Mass. 144. *Fortin* v. *Chicopee,* 301 Mass. 447, 448. *Goss* v. *District Court of Holyoke,* 302 Mass. 148, 149. *Forbes* v. *Woburn, ante,* 67. There was no reversible error in dealing with the claims of these plaintiffs.

2. The defendant contends that the facts found do not warrant the finding of the trial judge that contracts were made by the school committee with the teachers and superintendent. The judge found that the plaintiffs in group (3) were under contract with the city at stipulated salaries for the two school years of 1937–1938 and 1938–1939; that these contracts were made by the school committee; that the salaries were fixed by the rules then in force of the school committee; and that these contracts existed

whether the teachers were under annual appointment or "tenure."

The charter of the city of Woburn provides that the management and the control of public schools shall be vested in a school committee, which shall exercise the powers and discharge the duties imposed by law upon school committees. St. 1897, c. 172, § 28. The power to contract with teachers in the public schools and to fix their salaries is vested in the school committee by G. L. (Ter. Ed.) c. 71, § 38, and it is plain from the provision of G. L. (Ter. Ed.) c. 71, § 59, that the power of the school committee over the salary of the superintendent of schools is the same as over salaries of teachers. *Leonard* v. *School Committee of Springfield*, 241 Mass. 325, 328. *Decatur* v. *Auditor of Peabody*, 251 Mass. 82, 88. To be sure, this power to contract is necessarily subject to the provision of § 40, whereby the minimum compensation of every regular teacher of every public day school shall be at a rate of not less than $750 for the school year (see *Frye* v. *School Committee of Leicester*, 300 Mass. 537, 540), as well as to the provisions of §§ 41, 42 and 43 of said c. 71, relative to the tenure of teachers employed "at . . . discretion," to their suspension and discharge, and to the reduction of their salaries. See *Paquette* v. *Fall River*, 278 Mass. 172; *Graves* v. *School Committee of Wellesley*, 299 Mass. 80, 81; *Frye* v. *School Committee of Leicester*, 300 Mass. 537.

We are of opinion that this power to contract with teachers and the superintendent is not limited to the making of contracts that will run only during the financial year of the city. Contracts for the school year, as distinguished from the financial year, are not unknown. See *Sheldon* v. *School Committee of Hopedale*, 276 Mass. 230, 231; *Pulvino* v. *Yarmouth*, 286 Mass. 21, 22; *Frye* v. *School Committee of Leicester*, 300 Mass. 537. Compare *Decatur* v. *Auditor of Peabody*, 251 Mass. 82, 84; *McDevitt* v. *School Committee of Malden*, 298 Mass. 213. The provision of said § 41 that every school committee, except in Boston, in electing a teacher or superintendent who has served in its public schools for three previous consecutive school years, shall employ him to serve

at discretion is mandatory, and, in connection with the provision of § 38 of said c. 71, to the effect that the school committee shall elect and contract with the teachers of the public schools, tends to the conclusion that the employment of teachers or of a superintendent is not necessarily related to the financial year of the city.  Such a construction is consistent with the provision that a teacher or superintendent may serve "for the three previous consecutive school years" (§ 41), and thereby acquire a tenure, if employed for the fourth year, to serve at the discretion of the school committee.  *Paquette* v. *Fall River*, 278 Mass. 172, 174.  In the cases at bar, the great majority of the teachers were already employed at discretion in 1938; several were elected on June 1, 1937, for one year and on July 25, 1938, they were put under "tenure" by vote of the school committee for the school year commencing in September, 1938.  Others were elected on June 1, 1937, to serve for one school year and again in July, 1938, to serve for the school year beginning in September, 1938.  It is apparent from a consideration of the statutes relative to the employment of school teachers that those who are not employed at discretion serve only upon a yearly basis.  *Whittaker* v. *Salem*, 216 Mass. 483, 485.  Although they do not come within the provisions of §§ 41, 42 and 43 of c. 71, they are nevertheless under contract.

From the testimony of the superintendent of schools, which is made a part of the bill of exceptions and found by the trial judge to be true and accurate, it appears that all teachers who are elected for one year are notified of their election, and apparently of the amount of their salaries for the year; that those who have already served as teachers for three consecutive years are notified of their election to serve thereafter at discretion but are not notified of the amount of their salaries; and that those who are already serving at discretion receive no notification.  It does not appear that any of the plaintiffs formally acknowledged receipt of any notification they may have received.  The rules and regulations of the school committee provide for minimum and maximum salaries for teachers with annual increases, and it could have

been found that all teachers were familiar with the rules in this respect.

There were no written contracts and none were necessary. The rights of the teachers who were elected to serve and the obligations of the defendant are those created and defined by the statutes as applied to the facts disclosed in the cases at bar. Here all of the teachers and the superintendent were serving in 1938 as the result of their elections. In the circumstances, we think that it follows from the employment of the teachers who were serving at discretion, from the compensation paid them in previous years, and from the step-up increases for which the rules of the committee provide, that they were all under contract. From the election of the other plaintiffs at rates of salaries fixed by the rules of the committee with due regard to statutory requirements, and the rendition of service, a contract of employment could be inferred. *Paquette* v. *Fall River*, 278 Mass. 172, 173-174. The exceptions to the rulings and refusals to rule of the trial judge in relation to the question whether the plaintiffs had contracts are overruled.

3. G. L. (Ter. Ed.) c. 44, § 31, provides, so far as material, that no department of any city or town, except Boston, shall incur liability in excess of the appropriation made for the use of such department, and the defendant contends that, if it be held that the plaintiffs in group (3) have contracts, they are unenforceable for the reason that the school department acted in violation of the provisions of said § 31.

Estimates of the school committee for salaries and other expenses of the school department for the financial year 1938, which ended on December 31, were seasonably submitted to the mayor. The school year in Woburn runs from September 1 of one year to and including August 31 of the next, and the estimates for salaries, which were based upon the cost of service in the financial year of 1937, were for those parts of the school years of 1937–1938 and 1938–1939 that were comprised within the financial year of 1938. Apart from certain adjustments for resignations and retirements with replacements at lower salaries, these estimates represented a sum necessary to pay salaries of the teachers

and superintendent as fixed by contracts alleged to have been made by the school committee with them relative to their salaries for 1938. The estimated amount for teachers' salaries was approximately $247,000, and the estimated amount for wages of other employees and the salary of the superintendent was approximately $38,000. The amount appropriated for these purposes in the budget that was adopted on May 6, 1938, was $240,982.96. Before and after the adoption of the budget, payrolls submitted by the school department were at the same salary rates as were in effect on December 31, 1937. In the summer of 1938 certain "step-up" increases, for which the rules of the school department provided, became effective and the payrolls submitted after September 1, 1938, reflected these increases. Throughout 1938, however, the salary payroll maintained by the school committee was approximately that of 1937, inasmuch as increases and deductions substantially offset each other. The salary appropriation for the school department was exhausted on October 31. The school teachers, superintendent and employees, however, continued to work and perform their duties, and the judge found that, although the school committee was aware of the reduced appropriation, it acted in good faith and with due regard for the needs of the public schools in Woburn in maintaining the school salary list.

*Decatur* v. *Auditor of Peabody*, 251 Mass. 82, was a petition by school teachers and other school department employees for a writ of mandamus to require the auditor, treasurer, and mayor of the defendant city to perform the necessary acts of approval of payrolls and payment thereof which would cause to be paid an increase of salaries voted to the petitioners by the school committee. The petition was dismissed, it appearing that out of the appropriation actually made for schools for the year in question enough did not remain to meet the increases, and, therefore, "it is not the official duty of the respondents at present to pay out money in the circumstances here disclosed" (page 90). In that case the mayor had failed to include in the budget, which was approved by the city council, an item for in-

creases in salaries of teachers, although the school committee in the detailed estimate of expenses of the school department that was submitted to the mayor had included this item. The appropriation for the school department was exhausted before the end of the financial year. It was there said, in effect, that one consideration, and one alone, put the school committee, with respect to salaries of teachers, upon a basis different from that of other municipal departments, namely, a provision in G. L. c. 71, § 34, that "Towns shall raise by taxation money necessary for the support of public schools as required by this chapter." It was also said (page 88) that the requirement that the school committee shall "contract with the teachers of the public schools" is something more than the simple permission to one board of public officers to make contracts or to fix salaries, and that the design of said § 34 was to make the observance of certain requirements of G. L. c. 71 imperative upon municipalities and not subject even to the limitations of the provisions of law as to the budget. With reference to public schools it was said that there is both the power in the school committee and the express legislative mandate to the municipality to "raise by taxation" the necessary money, and that it follows from the provisions of said § 34 touching the public schools, "that it is the duty of those framing the budget under G. L. c. 44, § 32, to conform to G. L. c. 71, § 38, and to provide for the salaries of teachers in the public schools as voted by the school committee" (page 89). It was also said that the power of the school committee over the salary of the superintendent of schools is the same as over salaries of teachers.

. In *McCarthy* v. *Malden,* 303 Mass. 563, it was held that the effect of § 31 of said c. 44 was not to destroy the authority of a board of park commissioners authorized by statute to appoint and fix the compensation of certain officials and to contract on behalf of the municipality, but rather to place a limitation on that authority with the result that a contract made by such officers in violation of the provisions of said § 31 was not binding upon the city, and that

unless the plaintiff, a clerk appointed by said board by virtue of its statutory authority, was aided by some other provision of law, she could not recover anything in excess of the amounts appropriated for her salary in the respective years, notwithstanding the board's general authority to contract with her on behalf of the city (pages 565–566).

It follows all the more certainly that the peremptory and unequivocal duty found in the requirement of the statute that the school committee shall "contract with the teachers of the public schools" is not affected, in so far as the making of contracts with teachers and superintendents is concerned, by the provisions of said § 31. See *Police Commissioner of Boston* v. *Boston*, 239 Mass. 401, 409; *Leonard* v. *School Committee of Springfield*, 241 Mass. 325; *School Committee of Lowell* v. *Mayor of Lowell*, 265 Mass. 353; *Police Commissioner of Boston* v. *Boston*, 279 Mass. 577, 581, 582.

Other provisions of said c. 71 aid in this conclusion. Section 43 provides, in substance, that the salary of no teacher employed in any town, except Boston, to serve at discretion shall be reduced without his consent except by a general salary revision affecting equally all teachers of the same general grade in the town, and that the salary of no superintendent so employed shall be reduced without his consent until at least one year after the committee has so voted. Section 40, as already pointed out, contains a provision as to the minimum rate of compensation that must be paid to a teacher, and § 42, in the form now appearing in St. 1934, c. 123, contains provisions relative to the suspension and discharge of teachers and superintendents, and especially as to those employed at discretion. These provisions generally give plain indication of the intention of the Legislature to provide for a reasonable degree of certainty in the employment, tenure, and salary of teachers and superintendents.

Whether they may sue and recover for unpaid salaries in the absence of an appropriation remains to be considered.

4. The defendant contends that no action of contract can be maintained by the school teachers and other em-

ployees of the school department in the circumstances disclosed for the reason that § 34 of said c. 71 provides the only remedy for failure to raise by taxation money necessary for the support of public schools as required by said chapter. The trial judge denied the defendant's request that was to this effect. The court has not passed upon this precise question before.

As already pointed out, said § 34 provides that "Towns shall raise by taxation money necessary for the support of public schools as required by this chapter," and, as was said in the *Decatur* case, these words "are words of command and not of choice. They convey a positive and inflexible legislative command" (page 88). Said § 34 further provides that "for refusal or neglect so to do [raise the necessary money] a town shall forfeit to the county an amount equal to twice the highest sum ever before voted for the support of the schools in the town . . . . Three fourths of any forfeiture so recovered shall be paid by the county treasurer to the school committee . . . of the delinquent town, who shall expend it for the support of the schools thereof as if regularly appropriated by the town therefor." (See now St. 1939, c. 294.) In the *Decatur* case, the court said, at page 90: "We do not go so far as to hold that the school committee has power to disregard the provisions of G. L. c. 44, § 31, and involve the city in debt in excess of appropriation. A different remedy is set forth in G. L. c. 71, § 34, for failure to raise money necessary for the support of public schools as required by said c. 71. The question presented by this record has been one of genuine difficulty about which municipal officers of integrity and zeal for the public welfare well might and doubtless have differed. But it cannot be assumed that any mayor and city council, when the law has been interpreted, would fail to make the necessary appropriations. *Police Commissioner of Boston* v. *Boston*, 239 Mass. 401, 409."

In *Leonard* v. *School Committee of Springfield*, 241 Mass. 325, it was pointed out that no question was raised as to the attempt by a school committee to spend more than a total appropriation made for the support of the public

schools and that the statutes conferred upon the school committee power to establish the salaries of teachers within the total amounts appropriated by the budget. It was said, however, at pages 329 and 330: "The Legislature, moved by obvious and strong reasons, has vested the school committee with the absolute and unconditional power to agree with teachers upon their salaries . . . . In the exercise of their honest judgment on the question of salaries for teachers, the school committee are not restricted to the amounts appropriated. For the time during which schools must be kept by law the municipalities must pay such salaries as may be fixed by the school committee. To take this power from the school committee would break up the long established system of our law in regard to public schools. The only supervision which the city council or towns can exercise over the school committee is to vote to close the schools after they have been kept the length of time specified by the law." It is to be observed, however, that the last quoted statements were not quite required by the decision that the school board had the power to establish the salaries of teachers "within the total amounts appropriated by the budget" (page 332).

In *School Committee of Lowell* v. *Mayor of Lowell*, 265 Mass. 353, the school committee petitioned for a writ of mandamus commanding the city to raise by taxation and appropriate such a sum of money as they had determined necessary for the support of the schools, and commanding the mayor, city council and financial committee of the city to further such appropriations by the exercise of powers vested in them by law. The officials of the city had refused to make adequate appropriations as requested by the school committee. The petition was dismissed on the ground that the Legislature had provided a comprehensive remedy by § 34 of said c. 71 "in place of whatever relief might otherwise be available" (page 357). The court was careful to point out that the school committee had no private interest in the subject matter of the grievances that were alleged to exist. The general rule was invoked, as a bar to the maintenance of the petition, that where a statute has been enacted, seemingly

intended to cover the whole subject to which it relates, including a remedy for its infraction, other provisions of the common law, including such as are remedial in nature, are thereby superseded.

Apart from the effect that the provisions of said c. 44 may have as to the right of the plaintiffs in group (3) to recover for their salaries, it was long ago decided in *Batchelder* v. *Salem*, 4 Cush. 599, that the power conferred upon school committees to select and contract with the teachers included the power to fix compensation to be paid them and to bind the town to pay, although there was no sufficient appropriation from which to pay. Although it is not discussed in that case, it is the fact that the charter of Salem, St. 1836, c. 42, contained a provision in § 8 that "the city council shall take care that moneys shall not be paid from the treasury unless granted or appropriated."

In *Barnard* v. *Lynn*, 295 Mass. 144, it was held that laborers employed by the city in the classified civil service were entitled to recover their wages despite the fact that the budget for the current year appropriated a sum insufficient to pay the salaries and wages in the department in which they were employed. See *Fortin* v. *Chicopee*, 301 Mass. 447, 448; *Goss* v. *District Court of Holyoke*, 302 Mass. 148, 149; *Forbes* v. *Woburn, ante*, 67. In our opinion, however, the cases at bar, in so far as the superintendent of schools and teachers are concerned, are not governed by these decisions. There is no provision of law that would afford relief, either directly or indirectly, for plaintiffs situated as were those in the cases cited, if they were not permitted to recover in an action of contract for the wages that they had earned in their employment.

As early as 1647 there was a law of the Colony requiring that schools be provided, and imposing a penalty for the neglect so to do. In varying forms this law has persisted ever since. St. 1827, c. 143, § 19, provided a penalty for the refusal or neglect to vote and raise money for the support of the schools, and the provisions of that statute are substantially the same as those contained in § 34 of said c. 71.

With this background of nearly three hundred years of legislation disclosing an unvarying purpose to insure the maintenance and independence of public schools, we are of opinion that the Legislature well may have assumed that the drastic penalties provided would be avoided by a compliance with the law as to appropriations for the support of the schools, and that the assumption of Chief Justice Rugg was not unwarranted when, in *Decatur* v. *Auditor of Peabody*, 251 Mass. 82, he said, at page 90: "But it cannot be assumed that any mayor and city council, when the law has been interpreted, would fail to make the necessary appropriations." We are also of opinion that the Legislature did not intend that the rigid requirements of the municipal finance act (c. 44) should be lessened by permitting actions at law by individuals, but that it did intend that the remedy provided by § 34 of said c. 71 should be exclusive. Furthermore, St. 1939, c. 294, although enacted after the several actions in the cases at bar were instituted, discloses a legislative intent to make the remedy provided for in § 34 more practical and efficient. See *Wynn* v. *Assessors of Boston*, 281 Mass. 245, 249, 250.

It was said, in effect, in *Leonard* v. *School Committee of Springfield*, 241 Mass. 325, that it could not have been intended by the legislators that there should be a conflict between these two acts or "that they could not stand together as practically workable statutes" (pages 331–332). If, as was said in *School Committee of Lowell* v. *Mayor of Lowell*, 265 Mass. 353, the remedy provided is "a comprehensive remedy established by the Legislature in place of whatever relief might otherwise be available" (page 357), if we consider what was said in the *Decatur* case, and if we keep in mind that if any penalty is recovered it shall be expended as if regularly appropriated, then we see no way to make the two statutes under consideration "workable," other than by holding that the salaries that have been earned, and that should have been paid, must come from the penalty provided for, when exacted. The plaintiffs' actions upon their contracts do not lie because of the unusual and not to be

expected circumstances in relation to the budget here disclosed, in consequence of which they are remitted to the indirect remedy provided by statute.

5. The question remains as to the cases brought by the employees of the school department, all of whom were in the classified civil service. At first thought it might seem that their cases were governed by the decision in *Barnard* v. *Lynn*, 295 Mass. 144, and cases that have followed. On the other hand their status is not quite like that of the plaintiffs in those cases. They are employees of the school department, and it is assumed that, under the provisions of § 34 of said c. 71, they would share in any sums recovered thereunder that are required to be expended "for the support of the schools . . . as if regularly appropriated by the town therefor." In other words, the law has provided a remedy which, if prosecuted, will make available to these plaintiffs, as well as to the teachers and superintendent of schools, a sum sufficient to pay whatever is due them. It is true that the teachers and employees have a private interest in the subject matter of the grievance that is at the bottom of these cases, and that in this respect they are differently situated from the petitioners in *School Committee of Lowell* v. *Mayor of Lowell*, 265 Mass. 353, 356, 357, but notwithstanding this, we are of opinion that this interest does not entitle them to maintain their actions.

The exceptions of the defendant are sustained to the refusal to rule that § 34 of said c. 71 provides the only remedy, in so far as the plaintiffs in groups (3) and (4) are concerned; the exceptions in the cases of the plaintiffs in groups (1) and (2) are overruled.

*So ordered.*