## School Committee of Gloucester *vs.* City of Gloucester & others.

Essex.   March 8, 9, 1949. — April 8, 1949.

Present: Qua, C.J., Lummus, Ronan, Wilkins, & Williams, JJ.

*School and School Committee. Municipal Corporations,* Purchasing.

G. L. (Ter. Ed.) c. 41, § 103, providing for the establishment of a municipal purchasing department to "purchase all supplies for" the municipality "and for every department thereof" when accepted by the municipality, does not interfere with the traditional power of its school committee to determine educational policy, but merely modifies the powers and duties of the school committee under c. 71, § 48, to the extent of placing in the hands of the purchasing department as a central agency the conduct of the business details of the actual buying for the sake of efficiency; and the school committee is not excepted from the operation of § 103.

An ordinance of a city, enacted under G. L. (Ter. Ed.) c. 41, § 103, upon its acceptance therein, establishing a purchasing department to "purchase all supplies, material and equipment required for the city . . . and for every department thereof" and providing that the school committee should "determine and send a requisition to the city purchasing agent to purchase textbooks" and other items and that "quality of the article to be furnished" should "be deemed first in importance," was valid and binding on the school committee notwithstanding a further provision that the purchasing agent should "procure the article he . . . [considered] best in quality, all other things being equal": the school committee's determination of quality as to articles peculiar to the field of education was conclusive upon the purchasing department.

There was no merit in a contention of the school committee of a city that the committee should not be bound by an ordinance establishing a city purchasing department because the ordinance provided no guaranty of expeditious honoring of requisitions.

Bill in equity, filed in the Superior Court on May 3, 1948.

The suit was heard by *Baker*, J.

*A. K. Carey*, for the plaintiff.

*C. W. Wonson*, City Solicitor, for the defendants.

WILKINS, J.   This bill in equity, brought by the school committee of Gloucester against the city, its mayor, and its purchasing agent, seeks "a binding declaration of the rights and duties of the plaintiffs, acting as a school committee under G. L. (Ter. Ed.) c. 71, and of the defendants" under an ordinance enacted by the city council establishing a purchasing department.   G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1.   The case was heard upon the pleadings and certain exhibits introduced in evidence, which were orally agreed to constitute a "statement of agreed facts."   The judge ruled that the ordinance is valid and binding on the school committee, and reserved and reported to this court "all questions of law herein" upon the pleadings, the "statement of agreed facts," and his "findings, rulings, and order for declaratory decree." G. L. (Ter. Ed.) c. 214, § 31.

The ordinance was enacted purportedly pursuant to G. L. (Ter. Ed.) c. 41, § 103, which reads: "A city which accepts this section in the manner provided in the following section . . . may establish a purchasing department, to consist of a purchasing agent and such assistants as the city council . . . may determine. . . . The purchasing agent shall purchase all supplies for the city . . . and for every department thereof except in case of emergency.   All purchases or contracts for purchases exceeding one hundred dollars in amount shall be based upon competition.   A record shall be kept by the department of the prices paid for the supplies, and shall be open to the inspection of any citizen." Section 104 provides that § 103 may be submitted for acceptance to the voters of a city on the ballot at any annual city election, and shall take effect if a majority of the voters voting thereon shall vote in the affirmative.   On December 2, 1947, at a city election the voters of the city of Gloucester accepted § 103.

The ordinance (c. 163 of the ordinances of the city of Gloucester) entitled "An Ordinance establishing a purchasing department for the city of Gloucester," was enacted April 2, 1948, and provides in part: "Section 5.   The city

purchasing agent shall purchase all supplies, material and equipment required for the city of Gloucester and for every department thereof, except in case of emergency. The school committee shall determine and send a requisition to the city purchasing agent to purchase textbooks, library books and items used for technical instruction. All purchases or contracts for purchases exceeding One Hundred Dollars ($100) in amount shall be based upon competition. Section 6. The city purchasing agent when purchasing materials, equipment and supplies for the city and for any department thereof shall, when quality, price and delivery are equal, give preference to merchants doing business in the city of Gloucester. Quality of the article to be furnished shall be deemed first in importance and after making his comparison of the bids received, the purchasing agent shall procure the article he considers best in quality, all other things being equal."

The school committee[1] contends that the ordinance is invalid, (1) as exceeding the authority conferred by § 103, and (2) as illegally attempting to deprive the committee of its power and obligation under G. L. (Ter. Ed.) c. 71, § 48.

We shall consider the second point first. Section 48 of c. 71 reads: "The [school] committee shall, at the expense of the town, purchase textbooks and other school supplies, and, under such regulations as to their care and custody as it may prescribe, shall loan them to the pupils free of charge. If instruction is given in the manual and domestic arts, it may so purchase and loan the necessary tools, implements and materials. It shall also, at like expense, procure such apparatus, reference books and other means of illustration, as may be needed."

Section 48 of c. 71 had its origin in St. 1826, c. 143, § 7, and St. 1855, c. 436, and has been consecutively on our statute books in some form ever since. Rev. Sts. c. 23, § 19. Gen. Sts. c. 38, § 29. St. 1873, c. 106. St. 1878,

---

[1] The city charter sheds no light on these questions. For its provisions relating to the school committee, see St. 1908, c. 611, § 21, and § 22 as amended by St. 1924, c. 464, § 1.

c. 23. Pub. Sts. c. 44, § 40. St. 1884, c. 103. St. 1885, c. 161, § 2. St. 1894, c. 320, § 2. In the compilation of the Revised Laws the substance and phraseology of these provisions were much the same as now. R. L. c. 42, §§ 35, 37. Sections 103 and 104 of c. 41 are of relatively recent origin. St. 1916, c. 223. St. 1920, c. 591, § 30.

It is to be presumed that the General Court in enacting the statute permitting the establishment of a purchasing department had in mind the earlier statute relating to the powers of the school committee. *Devney's Case,* 223 Mass. 270, 271. *Johnson's Case,* 318 Mass. 741, 745. "A statute is to be interpreted with reference to the preëxisting law. . . . If reasonably practicable, it is to be explained in conjunction with other statutes to the end that there may be an harmonious and consistent body of law. . . . Statutes 'alleged to be inconsistent with each other, in whole or in part, must be so construed as to give reasonable effect to both, unless there be some positive repugnancy between them.' *Brooks* v. *Fitchburg & Leominster Street Railway,* 200 Mass. 8, 17." *Walsh* v. *Commissioners of Civil Service,* 300 Mass. 244, 246. *Eastern Racing Association, Inc.* v. *Assessors of Revere,* 300 Mass. 578, 581. *Assessors of Brookline* v. *Prudential Ins. Co.* 310 Mass. 300, 307. "It is the duty of the court to construe the various statutory provisions touching upon a point in issue with due regard to all of them, 'so as to give a rational and workable effect to the whole so far as practicable.' *Thacher* v. *Secretary of the Commonwealth,* 250 Mass. 188, 191." *McCarthy* v. *Rogers,* 295 Mass. 245, 249. *Hardman* v. *Collector of Taxes of North Adams,* 317 Mass. 439, 442–443.

Section 103 of c. 41 prescribes in broad terms that the "purchasing agent shall purchase all supplies for the city . . . and for every department thereof except in case of emergency." It aims to afford a central authority charged with carrying out the details of acquiring all the city's supplies. An undoubted purpose is a saving in expenditure through enabling the purchase of many items in larger quantities than would be possible if each department should

act on its own.  There also might be an advantage to the city accruing from experience concentrated in the purchasing department.  To uphold the school committee's contention would require the interpretation that within the meaning of § 103, not only is the school committee not a department of the city but also that purchases of its supplies are not purchases for the city.  That school expenditures are a large part of the annual tax levy in our municipalities, and very often the largest single item, is common knowledge.

Recognizing, as anyone must, that words would not have been difficult to find to express a legislative intention to except the school committee from the operation of the purchasing department statute, we consider the reasons advanced in argument for reading by implication such an exception into that statute.  The school committee approaches the subject from the opposite direction of G. L. (Ter. Ed.) c. 71.  Section 34 of that chapter, as appearing in St. 1939, c. 294, provides: "Every city and town shall annually provide an amount of money sufficient for the support of the public schools as required by this chapter." The words of § 34 "convey a positive and inflexible legislative command," and place the school committee in many respects "upon a basis different from that of other municipal departments." *Decatur* v. *Auditor of Peabody*, 251 Mass. 82, 87–88.  The school committee cites numerous cases in which a school committee has been held not to be controlled by various statutes of general application to the municipal government.  Among these cases, with the respective statutes held not to apply to a school committee, are *Leonard* v. *School Committee of Springfield*, 241 Mass. 325, and *Decatur* v. *Auditor of Peabody*, 251 Mass. 82, the budget law, G. L. c. 44, § 32, originally enacted as St. 1913, c. 719, entitled "An Act Relative to Municipal Indebtedness"; *Callahan* v. *Woburn*, 306 Mass. 265, 270–273, the municipal finance act, G. L. (Ter. Ed.) c. 44, § 31; *Davis* v. *School Committee of Somerville*, 307 Mass. 354, G. L. (Ter. Ed.) c. 32, § 37C, paragraph (2), as appearing in St. 1938,

c. 439, § 2, relating to retirement systems; *Ring* v. *Woburn*, 311 Mass. 679, the municipal finance act, G. L. (Ter. Ed.) c. 44, § 31; and *Hayes* v. *Brockton*, 313 Mass. 641, the budget law, G. L. (Ter. Ed.) c. 44, § 31A, inserted by St. 1941, c. 473, § 1. See *O'Connor* v. *Brockton*, 308 Mass. 34; *O'Brien* v. *Pittsfield*, 316 Mass. 283, 285; *James* v. *Mayor of New Bedford*, 319 Mass. 74, 75; *Watt* v. *Chelmsford*, 323 Mass. 697. The school committee argues that, as to all matters entrusted to it by c. 71, it is an independent board of public officers beyond the control of the municipal government; and that one of these matters is the purchase of textbooks and supplies, which is to be found in c. 71, § 48. The provisions of § 48 are mandatory. *Parkhurst* v. *Revere*, 263 Mass. 364, 370. *Ring* v. *Woburn*, 311 Mass. 679, 686, 688, 689–690. In *Davis* v. *School Committee of Somerville*, 307 Mass. 354, 363, it was said, "Where in the past the Legislature has limited the powers of school committees it has done so in express terms (G. L. [Ter. Ed.] c. 71, §§ 38–45), and it is to be expected that a radical departure from such previous policy would be expressed in clear language and not left to doubtful implication. *Leonard* v. *School Committee of Springfield*, 241 Mass. 325, 332." So, concludes this part of the school committee's argument, "§ 103 does not expressly or by proper implication limit the historic independence of the school committee" with respect to the power and obligation to purchase school supplies under § 48.

There have been cases, however, where the school committee has been held to be subject to limitations and requirements of statutes generally applicable to the municipal government. In *Eastern Massachusetts Street Railway* v. *Mayor of Fall River*, 308 Mass. 232, it was decided that a contract for the transportation of children made by the school committee of a city having a Plan A form of charter required the approval of the mayor, the school committee being a "department" or "board" under G. L. (Ter. Ed.) c. 43, § 29, as appearing in St. 1938, c. 378, § 10. It was nevertheless pointed out that the school committee's au-

thority to contract was not conferred under c. 71 but under G. L. (Ter. Ed.) c. 40, § 4, as amended by St. 1932, c. 271, § 6. See *Ring* v. *Woburn*, 311 Mass. 679, 688–689. Compare G. L. (Ter. Ed.) c. 71, § 68, as appearing in St. 1934, c. 97, § 1. At page 237 of 308 Mass. it was said, "Contracting for the furnishing of transportation of school children bears only a secondary relation to education. . . . In general, these [contracts requiring the mayor's approval] are mere business transactions. They do not as a rule directly relate to methods of education or to the policy, conduct, regulation and discipline of the schools. Ordinary commercial contracts have never hitherto been held to belong in the field in which by long established policy and tradition school committees have exercised exclusive and untrammeled control. On the contrary, contracts for the purchase of supplies, which are analogous to the contract here involved, were held in the *Holyoke* and *Revere* cases to require actual approval by the mayor." The cases referred to were *McLean* v. *Mayor of Holyoke*, 216 Mass. 62, *Parkhurst* v. *Revere*, 263 Mass. 364, and *Remington Typewriter Co.* v. *Revere*, 285 Mass. 1.

*McLean* v. *Mayor of Holyoke*, 216 Mass. 62, involved a contract for the purchase of desks and chairs for a school building. There had been no appropriation for the purpose, and the mayor had refused to approve on the ground that the appropriation actually made for school supplies would be insufficient for the needs of the year if the expense of this contract should be charged to it. The city charter (St. 1896, c. 438) expressly imposed upon the school committee the duty to furnish to the mayor an annual estimate of the moneys needed for its department, prohibited expenditures without an appropriation, and required the approval of the mayor to a contract like the one in question. A petition for a writ of mandamus to require the mayor to sign the contract was dismissed. No reference was made in the opinion to R. L. c. 42, §§ 35, 37, the predecessor of G. L. (Ter. Ed.) c. 71, § 48.

*Parkhurst* v. *Revere*, 263 Mass. 364, was an action to re-

cover for textbooks purchased by the school committee when there were no funds to pay for them. The city charter (St. 1914, c. 687) required the school committee to submit an annual estimate of the amount of money necessary for the proper maintenance of the schools, and "Unless otherwise required by law" prohibited the school committee from incurring any liability beyond the aggregate appropriation by the city council. Recovery was denied on the ground that the submission of an estimate for an amount sufficient to pay for the textbooks was a prerequisite to liability. A further reason for denying recovery for orders for $200 or more was the absence of approval by the mayor as required by the charter. The opinion quoted from G. L. c. 71, § 48, and said at page 370, "the provisions of G. L. c. 44, entitled 'Municipal Finance,' were intended to place municipal expenditures upon a strict budget basis." The *Parkhurst* case was followed as to the effect of the absence of an appropriation in *Remington Typewriter Co.* v. *Revere,* 285 Mass. 1, an action to recover for typewriters purchased by the school department. In rejecting an argument that there had been a ratification in a later year, it was said, at page 6, "The budget and municipal indebtedness acts [G. L. (Ter. Ed.) c. 44] cannot be thus circumvented." There was no allusion to c. 71, § 48.

The pertinent deduction to be drawn from the *Holyoke* and *Revere* cases is that the subject matter of G. L. (Ter. Ed.) c. 71, § 48, may be controlled by definite statutory limitations.

In *Gorman* v. *Peabody,* 312 Mass. 560, a vote of the school committee to increase by $200 the salary of each school teacher was held to be a "measure" subject to referendum within the meaning of the city charter of Peabody, contained in Spec. St. 1916, c. 300, § 48, which expressly referred to the school committee. The opinion discussed (pages 566–567) the "Report of the Joint Special Committee on City Charters," Senate Document (1915) No. 254, which stated that there had been a growing demand in some cities for more coördinate action in matters of finance between

the school committee and those city officials who are respon-
sible for the financial affairs of the city; that there had been
so many instances where school committees had attempted
to extend their independence to a point that carried them
beyond sound consideration of the financial condition of the
cities that it had been strongly urged, and the joint special
committee believed with justification, that some check
should be placed "upon these boards" in matters of
municipal finances; that the mayor of every city should be
chairman, ex officio, of the school committee; that the joint
special committee had come to the conclusion that the grant-
ing of "home rule" in connection with comparatively minor
matters was not only expedient but right; that the initiative
and referendum had come to be regarded as a feature of all
modern charters; and that recent charters had all contained
provisions by which the voters of any city might require the
passage of "ordinances," even though the city council had
not seen fit to do so. In the *Peabody* case, at page 569, it
was said, "When the Legislature in 1916 gave the legal
voters of Peabody the opportunity to determine whether
they would accept or reject the proposed charter, it must be
held to have been cognizant of the long line of decisions in
this Commonwealth that had uniformly upheld the statutory
power of school committees, and when the provision for the
referendum was inserted in the proposed charter, it was
for no idle purpose, nor was it a mere gesture." Again, at
pages 569–570, it was said, "The trend toward 'home rule,'
referred to by the committee on city charters in its report,
may be exemplified by the provisions of the referendum in
the case at bar. When it was decided in *Callahan* v. *Woburn*,
306 Mass. 265, 270–273, that the statutory provision that
the school committee shall contract with the teachers of the
public schools is not affected in so far as the making of
contracts with teachers is concerned by the provisions of
G. L. (Ter. Ed.) c. 44, § 31, no question was involved such
as is here raised. The facts in the case at bar present a
different question. The statutory provisions as to the powers
and duties of school committees, which are of long standing,

are to some extent, at least, by the charter provisions for the referendum, made subject to the orderly expression of the will of the registered voters, in so far as a 'measure' finally passed by the school committee is concerned."

The question comes down to this. Do the ordinance and its enabling statute in relation to c. 71, § 48, more closely resemble the statutes considered in cases like *Callahan* v. *Woburn*, 306 Mass. 265, or those considered in *Eastern Massachusetts Street Railway* v. *Mayor of Fall River*, 308 Mass. 232? Do they seek to interfere in the traditional supremacy of the school committee in the field of education or merely to establish a system for the efficient handling in centralized hands of the business affairs of the city? We think that the answer is the latter. As we view it, the ordinance and the enabling statute do not aim to circumscribe the school committee in the hiring of teachers, the details of curriculum, or other matters concerning the policy and discipline of the schools. They do, in the interests of sound business economy, endeavor to unify the control of the details of the city's commercial transactions.

It cannot be overlooked that the acceptance of the ordinance was made subject to a referendum. Statute 1916, c. 223, the predecessor of c. 41, § 103, was approved on May 16, 1916, eight days after the approval of Spec. St. 1916, c. 300, the city charter of Peabody, considered in *Gorman* v. *Peabody*, 312 Mass. 560. We find it hard to believe that the Legislature intended, or that the voters of Gloucester thought, that the creation of a purchasing department to handle the purchases of all supplies for the city and for every department thereof, was to leave untouched a sizeable portion of the city's purchases. We are of the opinion that c. 41, § 103, means what it literally says, and that this is a case where the Legislature intended that the powers and duties of school committees under c. 71, § 48, should be modified as to the conduct of the business details of the actual buying.

Although a modification by implication, it is not a "radical departure" from previous policy. The power of the school committee to make purchases under the predecessor statutes

of c. 71, § 48, has not always been free from municipal control. In Gen. Sts. c. 38, § 29, it was provided, "The school committee shall procure, at the expense of the city or town, a sufficient supply of textbooks for the public schools . . . . Said books shall be furnished to the pupils at such prices as to merely reimburse the expense of the same. . . ." Without repealing that provision, St. 1873, c. 106, provided (§ 1) that "Any city, by an ordinance of the city council, and any town by legal vote, may authorize the school committee to purchase textbooks for use in the public schools, said textbooks to be the property of the city or town, and to be loaned to pupils under such regulations as the school committee may provide." The statute last quoted was amended by St. 1878, c. 23, § 1, so as to include stationery. In 1882 the substance of these two statutes was preserved in the new compilation of statutes (Pub. Sts. c. 44, § 40) which also retained the substance of Gen. Sts. c. 38, § 29 (Pub. Sts. c. 44, § 36). In St. 1884, c. 103, § 1, it was provided, "The school committee of every city and town shall purchase, at the expense of such city or town, textbooks and other school supplies used in the public schools; and said textbooks and supplies shall be loaned to the pupils of said public schools free of charge, subject to such rules and regulations as to care and custody as the school committee may prescribe." There were no words of repeal of Pub. Sts. c. 44, § 40, until St. 1885, c. 161, § 1. Thus, from 1873 until 1885 the exercise of the authority of a school committee to buy textbooks to be loaned to pupils, and from 1878 until 1885 its authority to buy stationery, might depend upon the vote of a city council or of a town meeting. This surely does not indicate that the conduct of the details of making purchases was regarded as an inherent part of a school committee's duty to decide what articles should be purchased.

The question remains whether the ordinance exceeds the authority conferred by G. L. (Ter. Ed.) c. 41, § 103. We think that it does not. The school committee argues that § 6 of the ordinance deprives it of its discretion in

purchasing because "the purchasing agent shall procure the article he considers best in quality, all other things being equal." If the article to be purchased is peculiar to the field of education, the school committee's determination as to quality as disclosed in its requisition will be conclusive upon the purchasing department. In the important subject of textbooks no question could arise. There has been, since 1826, c. 143, § 7, an undoubted right in the school committee to direct what books should be used in the schools. See in addition to G. L. (Ter. Ed.) c. 71, § 48, and its predecessors, Rev. Sts. c. 23, § 17; Gen. Sts. c. 38, § 28; Pub. Sts. c. 44, § 33; R. L. c. 42, § 34. And changes in textbooks have required a larger vote than a majority of the school committee since St. 1859, c. 93, § 2. Gen. Sts. c. 38, § 28. Pub. Sts. c. 44, § 34. R. L. c. 42, § 38. G. L. c. 71, § 50. It is also objected that the ordinance provides no guaranty of the expeditious honoring of requisitions. It must be presumed that the purchasing department will comply with the ordinance. *Police Commissioner of Boston* v. *Boston*, 239 Mass. 401, 409. *Decatur* v. *Auditor of Peabody*, 251 Mass. 82, 90. *Davis* v. *Retirement Board of the County of Middlesex*, 312 Mass. 115, 120. *Dullea* v. *Retirement Board of Peabody*, 317 Mass. 525, 528–529.

A final decree is to be entered adjudging that the ordinance is valid and binding upon the school committee.

*So ordered.*