MANUEL SOUZA, JUNIOR, & others *vs.* CITY OF NEW BEDFORD
(and two companion cases [1]).

Bristol.    October 28, 1946. — January 3, 1947.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*New Bedford.    Municipal Corporations,* Municipal finance.

Salary increases for the year 1945 duly and seasonably voted to school
and other employees of the city of New Bedford by the school com-
mittee and the city council, respectively, never became effective as to
any part of 1945 because of § 2 of St. 1939, c. 444, where it appeared
that a loan incurred by the city under c. 444 was outstanding at the
times the increases were voted and until July 1, 1945, when it was
paid, that the budget for 1945, approved by the emergency finance
board under the statute in May, 1945, made no provision for the in-
creases, and that there never was any affirmative approval by that
board of any appropriation for the increases.

PETITION, filed in the Superior Court on May 6, 1946.
Also, ·

TWO ACTIONS OF CONTRACT.    Writs in the Superior Court
dated February 16, 1946.

The cases were reported by *Sullivan,* J.

*G. H. Young,* for the petitioners and plaintiffs.

*T. M. Quinn,* City Solicitor, (*G. B. Goodman,* Assistant
City Solicitor, with him,) for the city of New Bedford.

*R. C. Evarts,* by leave of court, submitted a brief as ami-
cus curiae.

WILKINS, J.    These are three cases brought to deter-
mine whether certain employees of the city are entitled
to a ten per cent increase in their salaries payable in the
year 1945.    The first case, a petition in equity by ten or
more taxable inhabitants, concerns the employees in the
school department.    G. L. (Ter. Ed.) c. 71, § 34, as appear-
ing in St. 1939, c. 294.    *Callahan* v. *Woburn,* 306 Mass.
265, 278.    The second and third cases are actions of con-

---

[1] The companion cases are by Elmer H. James against the city of New
Bedford and by George Hollingsworth against the city of New Bedford.

tract by a fireman and a police officer, respectively. *James v. Mayor of New Bedford*, 319 Mass. 74. The equity case was submitted upon agreed facts, and the second and third cases were submitted upon a statement of agreed facts meeting the requirements of a case stated. Upon request of the parties, the judge, without making any decision, reported the cases to this court for determination. G. L. (Ter. Ed.) c. 214, § 31; c. 231, § 111.

The city has a Plan B charter. G. L. (Ter. Ed.) c. 43, as amended. Most of the employees of the school department are under the protection of the civil service laws or of G. L. (Ter. Ed.) c. 71, § 41, and § 42, as appearing in St. 1934, c. 123, relative to the tenure of school teachers. On November 9, 1944, the school committee voted "that a sufficient sum be included in the 1945 budget to provide for a 10% increase in the salaries of all department employees." On November 30 the school committee voted "that the budget estimates for 1945, as submitted by the superintendent, be sent to the mayor as the board's estimates." On December 1 the school committee submitted to the mayor its budget estimates for 1945, consisting of several itemized sheets and a summary. The summary contained an estimate for "salaries and wages" of $1,417,099.66. The only reference to the ten per cent increase was a notation in the summary which read, "By vote of the school committee taken November 9, 1944, the superintendent of schools was directed to include in the 1945 budget a sum sufficient to grant a 10% increase to all school department employees. That sum is 141,709.96." The last mentioned figure was added into the total of the summary, but did not appear in the itemized estimates. On December 14 the city council passed the following ordinance to take effect on January 1, 1945: "The salaries, wages, compensation, and like remuneration payable to all the employees of the city of New Bedford who are now receiving $50 per week or less are hereby increased 10%, and all those employees who are now receiving more than $50 per week are hereby increased 5%." The salaries of the plaintiffs in the second and third cases

were less than $50 weekly. We assume that these plaintiffs are under the protection of the civil service laws. On December 28 the ordinance was amended by providing that it should "continue in effect until January 1, 1946, in view of the increase in the cost of living due to the existence of the present state of war." On December 30 the mayor sent to the city council "his disapproval and veto" of the ordinance, and on January 11, 1945, the city council, by a two-thirds vote of all its members, passed the ordinance notwithstanding the disapproval of the mayor. G. L. (Ter. Ed.) c. 43, § 55. On January 17 the clerk of the city council sent to the emergency finance board, created by St. 1933, c. 49, copies of the ordinance, the veto, and the vote of the city council overriding the veto. On January 30 the emergency finance board in a vote declared that the ordinance of January 11 "if complied with would call for a substantial increase in the appropriations," and "voted not to approve such increase." A copy of that vote was sent to the clerk of the city council under date of February 7. The mayor in submitting his recommended budget to the city council on February 16 made no provision for the increases voted by the school committee or by the city council. The total of the budget submitted by the mayor was $6,717,270.55, which included an amount of $1,386,695.96 for salaries and wages for all school department employees. The city council failed to take action with respect to any amount recommended in the budget by approving, reducing, or rejecting within forty-five days after receipt of the budget from the mayor. The several amounts then became "appropriations for the year." G. L. (Ter. Ed.) c. 44, § 32, as appearing in St. 1941, c. 473, § 2. Thereafter the mayor submitted the budget to the emergency finance board, which on May 1 approved it in the amount of $6,703,270.55. The reduction of $14,000 made by the board did not relate to salaries or wages. The votes of the school committee of November 9, 1944, and November 30, 1944, were orally brought to the attention of the emergency finance board by the mayor both before the vote of the board on January 30, 1945, and

before the approval of the budget on May 1, 1945. The board orally informed the mayor many times between January 1, 1945, and May 1, 1945, that no salary increases for any employees of the city would be approved by the board for the year 1945. No supplemental appropriation was made in 1945.

By St. 1939, c. 444, the city, with the approval of the emergency finance board, was authorized to borrow in 1939, 1940, and 1941, not in excess of certain specified amounts for meeting deficits in the overlay account resulting from abatements on account of tax assessments in each of the years from 1930 to 1939, inclusive. Pursuant thereto the city borrowed money and issued bonds and notes, which were outstanding obligations throughout the period from November 9, 1944, until July 1, 1945, when they were paid in full. The statute provided in § 2: "No appropriation voted for any purpose shall be valid without the approval of said board during any period while any loan incurred under authority of this act is outstanding, and the maximum amount which may be expended in each year or any portion thereof during said period, for any and all municipal purposes, shall be fixed by said board, any provision of the general laws to the contrary notwithstanding, but all debt and interest falling due shall be paid." The factual basis for the application of the statute, therefore, existed, and the question for determination is its effect in the circumstances of these cases.

The petitioners and the plaintiffs urge that the votes of increased salaries became effective without the approval of the emergency finance board before submission of the mayor's recommended budget, and were binding upon the mayor whose duty it then became to make provision therefor in his recommendations. They contend that there may be recovery without an appropriation and rely upon such cases as *Hayes* v. *Brockton*, 313 Mass. 641, *O'Brien* v. *Pittsfield*, 316 Mass. 283, *Rock* v. *Pittsfield*, 316 Mass. 348, and *James* v. *Mayor of New Bedford*, 319 Mass. 74. It is further contended that the duty of the emergency finance board under St. 1939, c. 444, § 2, related to appropriations only,

and that, since no appropriations were in fact made for ten per cent increases, there was no effective action in those respects by the board. Such arguments seem to us to overlook the purpose and effect of St. 1939, c. 444. Section 2 was designed to benefit the holders of the bonds and notes issued under that chapter. The enactment, properly interpreted, was a protective one aimed at preventing, under certain conditions, not only appropriations but expenditures "without the approval of said board." This means an affirmative approval, which is lacking here. During the time when it applied, the statute provided no substitute for such approval. We do not ground our decision upon the fact that before the submission of the mayor's recommended budget there was a disapproving vote of the emergency finance board as to the ordinance of January 11, 1945, and there can be no advantage to the petitioners in the fact that there was no vote of the emergency finance board at any time expressly referring to the votes of the school committee of November 9 and 30, 1944. Likewise the omission by the mayor in his recommended budget of the amounts voted by the school committee and by the city council does not aid the petitioners and the plaintiffs. Whether it be accurate to say that for this reason there was no disapproving vote by the emergency finance board respecting the voted increases is beside the point. So is the suggestion that the salaries with the ten per cent increases were "fixed by law or by ordinance." See G. L. (Ter. Ed.) c. 44, § 33A, as appearing in St. 1943, c. 62. There was still no approval of appropriations for such increases by the emergency finance board. It is not correct to contend that by deciding for the city this omission by the mayor would be allowed to have the legal effect of depriving the several employees of the increases voted. The approval of the board was necessary to valid appropriations, and, irrespective of the course of events otherwise, such approval for the salary increases was never obtained. On the contrary, if the petitioners and the plaintiffs were to prevail, it would mean that the holders of the bonds and notes issued under St. 1939, c. 444, would be deprived of the intended statutory

protection, and a paramount requirement of the act would be defeated.

The case of *James* v. *Mayor of New Bedford*, 319 Mass. 74, decided upon demurrer to a petition for a writ of mandamus which set forth no allegations showing the applicability of St. 1939, c. 444, contains nothing to the contrary. As was said in the opinion in that case, "Hence upon the allegations of the petition the ordinance [of January 11, 1945] was a valid exercise of legislative power by the city council, and took effect at once upon its passage over the mayor's veto, unless it came into collision in some way with the special provisions of St. 1939, c. 444, § 2, giving the emergency finance board paramount control for a certain time over expenditures of the city of New Bedford, notwithstanding provisions of general laws" (pages 75–76). Such a collision now appears in the cases at bar, and the ordinance, as well as the votes of the school committee, did not take effect at once.

Nor do the petitioners and the plaintiffs stand on any better footing as to the period from July 1, 1945, to December 31, 1945, during which no loans incurred under the authority of the act were outstanding. The statute provided that while there were such loans "the maximum amount which may be expended in each year or any portion thereof . . . for any and all municipal purposes, shall be fixed by said board, any provision of the general laws to the contrary notwithstanding." The approval of the budget on May 1, 1945, by the emergency finance board had the effect of fixing the maximum amount to be expended in 1945. The budget procedure established by the Plan B charter, G. L. (Ter. Ed.) c. 44, §§ 32, 33, and 33A, as amended, was affected to this extent at least. We are not called upon to decide what would have been the effect of a supplemental appropriation made after July 1, 1945. G. L. (Ter. Ed.) c. 44, § 33A, as appearing in St. 1943, c. 62.

It follows that in the first case the petition should be dismissed and in the second and third cases there should be judgment for the defendant.

*So ordered.*