EDWARD P. HAYES & others *vs.* CITY OF BROCKTON.

Plymouth.　February 2, 3, 1943. — April 26, 1943.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*School and School Committee. Municipal Corporations*, Municipal finance. *Constitutional Law*, Separation of powers of government. *Jurisdiction*, Justiciable question.

General Laws (Ter. Ed.) c. 71, § 34, as appearing in St. 1939, c. 294, does not impose on the courts the duty of passing on the reasonableness or expediency of the amounts estimated by a school committee as necessary for school purposes required or permitted under c. 71, but merely provides a remedy for enforcing the duty of the municipality under said § 34 to provide the amounts so estimated by the committee; so construed, the statute is not unconstitutional as imposing any executive or legislative power on the courts.

Salaries of teachers in vocational and continuation schools maintained by a municipality, and of teachers, principals and supervisors in the other public schools, and sums paid janitors and office employees in the schools are expenditures for school purposes under G. L. (Ter. Ed.) c. 71 and the municipality under § 34, as appearing in St. 1939, c. 294, is bound and may be compelled to provide the amounts estimated by the school committee as necessary therefor.

The school committee of a city, respecting estimates of the amounts necessary for school purposes required or permitted under G. L. (Ter. Ed.) c. 71 which the city is bound to provide under § 34, as appearing in St. 1939, c. 294, is not subject to the provisions of G. L. (Ter. Ed.) c. 44, § 31A, inserted by St. 1941, c. 473, § 1.

A suit under G. L. (Ter. Ed.) c. 71, § 34, as appearing in St. 1939, c. 294, to establish a deficiency in the public school appropriation of a city for a certain year and to compel the city to provide the sums specified

in the statute was not barred by the mere fact that the school committee did not submit its estimates during November in the preceding year, as provided in G. L. (Ter. Ed.) c. 44, § 31A, inserted by St. 1941, c. 473, § 1, where the mayor received the estimates before the beginning of the period in which he was required by law to prepare the budget and submit it to the city council, and dealt with the estimates in preparing and submitting it.

PETITION, filed in the Superior Court on April 16, 1942.

The case was heard by *Swift,* J.

*L. E. Crowley,* for the petitioners.

*H. C. Gill,* for the respondent.

DOLAN, J. This is a petition brought under G. L. (Ter. Ed.) c. 71, § 34, inserted by St. 1939, c. 294, by ten or more taxable inhabitants of the respondent city of Brockton, for the determination of an alleged deficiency in the amount of money appropriated by the respondent (hereinafter referred to as the city) for the support of the public schools of the city for the year 1942, and to compel the city to provide the amount of the deficit in that appropriation together with a sum equal to twenty-five per cent of such deficiency, in accordance with the provisions of the statute above referred to.

The case was heard by the judge upon the pleadings and an "agreed statement of facts." After hearing, the judge ordered that a final decree be entered dismissing the petition, and reported the case for the determination of this court.

The material facts may be summed up as follows: The city operates under a plan B charter, under which the management and control of the schools are vested in the school committee, which is authorized and empowered to exercise the powers and is bound to discharge the duties imposed by law upon school committees.

On December 5, 1941, the school committee presented to the then mayor of the city itemized and detailed estimates of the amounts it deemed necessary for the support of the public schools during the fiscal and calendar year of 1942, the total amount requested being $901,160.72. On January 5, 1942, the city government for the year 1942 was organized and Joseph H. Downey took office as mayor.

In conformance with G. L. (Ter. Ed.) c. 44, § 32, inserted by St. 1941, c. 473, § 2, the new mayor, within forty-five days after the organization of the new city government, submitted the annual budget for 1942 to the city council which approved that budget and appropriated the sums called for therein. The budget called for and the city council appropriated $867,660.94 for school purposes. The difference between the estimate of the school committee and the amount appropriated by the city council is thus $33,499.78. This total breaks down into differences between the estimates and the amounts recommended and appropriated for personal services and ordinary maintenance under the headings of "School Department," "Continuation and Vocational Schools," and "Evening Practical Arts"; fór travel outside the State under "School Department"; and for new equipment under "Continuation and Vocational Schools." It is agreed that the only deficiencies now claimed are those for personal services under "School Department" and "Continuation and Vocational Schools," and for ordinary maintenance under "School Department," which includes the salaries of janitors. The deficiencies claimed to exist are $24,123.98 for personal services under "School Department," $1,667.80 for ordinary maintenance under "School Department," and $2,910 for personal services under "Continuation and Vocational Schools," making a total of $28,701.78.

In November, 1941, the school committee voted to increase the maximum salaries of two hundred twenty-four women teachers $100 per annum; to increase the salaries of several principals and other supervisors and office employees; and to place the male teachers in the vocational and continuation schools upon the same salary scale as that of male teachers in the high school. The differences in the respective amounts of the committee's estimates and the city's appropriations under the headings "School Department" and "Continuation and Vocational Schools" result from the mayor's failure to include in his budget the sums required to pay those salary increases.

All subjects taught in the public schools of Brockton are

required to be taught therein by G. L. (Ter. Ed.) c. 71, or are subjects that the school committee deems expedient to have taught. The city is not exempted by the State department of education from maintaining a high school as required by G. L. (Ter. Ed.) c. 71, § 4. The superintendent of schools and all teachers employed in 1942 were serving either under annual contracts or under "tenure" in accordance with G. L. (Ter. Ed.) c. 71, §§ 38, 41 and 59. All other employees, including janitors, are under civil service.

It is unnecessary to recite other facts and figures appearing in the pleadings or agreed facts, since they relate only to the reasonableness of the estimates of the school committee and not to the question whether the sums requested are for expenses provided for under c. 71. It is to this question alone that this court may address its attention under G. L. (Ter. Ed.) c. 71, § 34, inserted by St. 1939, c. 294. See *Ring* v. *Woburn*, 311 Mass. 679, 683.

The legislative history of the governing statute has been fully reviewed in *Callahan* v. *Woburn*, 306 Mass. 265, and *Ring* v. *Woburn*, 311 Mass. 679. It is settled by those cases and the cases therein cited that G. L. (Ter. Ed.) c. 71, §§ 21-26, 37 and 38, which vest in the school committee the general charge of all public schools, including high schools, continuation schools and vocational schools, and the power to elect and contract with teachers, give the school committee the sole and absolute right to fix the salaries of those teachers, and that under § 34, inserted by St. 1939, c. 294, the city is bound to appropriate an amount necessary to meet the salaries of teachers as fixed by the school committee. For the history of the previous remedies afforded by statute for the enforcement of a city's obligation in that respect, see *Callahan* v. *Woburn*, 306 Mass. 265; *Ring* v. *Woburn*, 311 Mass. 679.

It is objected by the city that G. L. (Ter. Ed.) c. 71, § 34, as inserted by St. 1939, c. 294, is unconstitutional in that it imposes other than judicial functions upon the Superior Court. That statute provides in part that "Every city and town shall annually provide an amount of money

sufficient for the support of the public schools as required by this chapter.   Upon petition to the superior court, sitting in equity, against a city or town, brought by ten or more taxable inhabitants thereof . . . alleging that the amount necessary in such city or town for the support of public schools as aforesaid has not been included in the annual budget appropriations for said year, said court may determine the amount of the deficiency, if any, and may order such city and all its officers whose action is necessary to carry out such order, or such town and its treasurer, selectmen and assessors, to provide a sum of money equal to such deficiency, together with a sum equal to twenty-five per cent thereof."

The question of the constitutionality of the statute was touched upon in *O'Connor* v. *Brockton*, 308 Mass. 34, 37, the court saying, "we are far from convinced that the section cannot be so construed as to present a proper question for judicial decision . . ."; and in *Ring* v. *Woburn*, 311 Mass. 679, 683, the court said, "It [the statute] does not purport to transfer to the judiciary any question of expediency as to appropriations or to require the court to enter into any consideration of municipal policy of financial administration of a city or town.   The court, however, is required to determine whether the requirements of said c. 71 have been met.   Judicial questions presented require consideration by this court."   We think this was but another way of saying that in so far as the statute confers upon the courts the power to compel appropriations for the purposes permitted to be or required to be engaged in by school committees under c. 71 in accordance with their estimates, the statute is constitutional, and that it is to be construed, not as an attempt to confer upon the courts any executive or legislative power to determine the reasonableness of any such estimates, but only as providing the means of compelling appropriations in accordance therewith.   This construction is in accord with the established principle that all rational presumptions are made that a statute enacted by the Legislature is valid, and that it "will not be treated as void unless it is impossible by

reasonable construction to interpret its provisions in harmony with the fundamental law of the Commonwealth." *Commonwealth* v. *Higgins*, 277 Mass. 191, 193. "Where practicable, a statute must be so interpreted as not to render it contrary to the terms of the Constitution and also to avoid grave doubts on that score." *Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145, 148, and cases cited. Reading the statute in the light of its origin and its development, we think that its plain purpose is solely to provide a remedy whereby the bounden duty of municipalities to appropriate moneys for the purposes set forth in c. 71, in accordance with the estimates of school committees, may be enforced; that this is not an executive or legislative function, but a judicial one. The purpose of the statute is to enforce obedience to the mandate of the Legislature by an appropriate proceeding. The statute is constitutional.

In *Ring* v. *Woburn*, 311 Mass. 679, it was decided that a city is bound by G. L. (Ter. Ed.) c. 71, § 34, inserted by St. 1939, c. 294, to provide for the salaries of school teachers as voted by the school committee. Needless to say, this includes the salaries of supervisors and principals. It was further held that the employment of clerical assistance, although not expressly provided for by c. 71 of the General Laws, nevertheless fell within the purview of c. 71 as necessary for the operation of the schools, and that under § 34 the city was bound to appropriate the amount called for by the school committee therefor. These rulings are decisive of the obligation of the city in the present case to appropriate the sums of money estimated by the school committee as necessary for personal services under the headings of "School Department" and "Continuation and Vocational Schools."

Again, in *Ring* v. *Woburn*, it was held that G. L. (Ter. Ed.) c. 71, § 68, inserted by St. 1934, c. 97, gave the school committee the general charge and control of schoolhouses and placed upon it the duty to keep them in good order. Therefore, maintenance of those buildings is a necessary expense for which the city is bound to provide under G. L. (Ter. Ed.) c. 71, § 34, inserted by St. 1939, c. 294. It was further held

that this duty to maintain schoolhouses included by necessary implication the power to employ janitors, and that the city was bound to provide money for janitors' salaries as required by the school committee. It follows that, in the case at bar, the city is to provide the sum estimated as necessary by the school committee for ordinary maintenance, including janitors' salaries, under "School Department." Compare *Eastern Massachusetts Street Railway* v. *Mayor of Fall River*, 308 Mass. 232, 237, where it was held that the authority to make contracts for the furnishing of transportation to school children, though given to the school committee, was not conferred upon it under c. 71; that it bore but a secondary relation to education. See also *Ring* v. *Woburn*, 311 Mass. 679, 688–689.

General Laws (Ter. Ed.) c. 44, § 31A, inserted by St. 1941, c. 473, § 1, provides that "Every officer of any city except Boston having charge of, or jurisdiction over, any office, department or undertaking, requesting an appropriation shall, between November first and December first of each year, furnish the mayor and the city auditor, or officer having similar duties, on forms provided by the city auditor or officer having similar duties, and approved by the division of accounts in the department of corporations and taxation, detailed estimates of the full amounts deemed necessary for the then ensuing year for the ordinary maintenance of the office, department or undertaking under his charge or jurisdiction, and for expenditures other than the ordinary maintenance, with the amounts, if any, expended for similar purposes during the then preceding year and during the first ten months of the then current year, and an estimate of the amounts required to be expended for such purposes during the last two months of the then current year, giving explanatory statements of any differences between the amount of any estimate for the then ensuing year and the amount expended or estimated to be required as aforesaid." Because the school committee did not present its estimate to the mayor during November, the city contends that the mayor was not required, in preparing the budget, to give consideration to the estimates presented by the school com-

mittee on December 5. The cases of *Parkhurst* v. *Revere*, 263 Mass. 364, and *Eastern Massachusetts Street Railway* v. *Mayor of Fall River*, 308 Mass. 232, are relied on in support of this position, but they may be distinguished. We have already pointed out the distinguishing factors in the latter case.

The city can derive no aid from the case of *Parkhurst* v. *Revere*, 263 Mass. 364. That case merely establishes the proposition, not in issue here, that the school committee has no authority to bind the city for expenses for necessary items (in that case textbooks) in excess of the amount called for in the estimate presented by the school committee to the mayor. In the case at bar the school committee included in its estimate a sum sufficient to cover all the items on account of which a deficiency is claimed. The city also argues in reliance upon the *Parkhurst* case that school committees for many years have been required to plan for their expenditures in advance and to submit estimates annually. It is true that in the *Parkhurst* case it was held that St. 1914, c. 687, § 49, required the school committee to submit an estimate in January of each year (page 370). But St. 1914, c. 687, was a special act incorporating the city of Revere, and § 49 thereof imposed that duty expressly upon the school committee of Revere.

*Eastern. Massachusetts Street Railway* v. *Mayor of Fall River*, 308 Mass. 232, 233, is cited by the city as authority for the proposition that a school committee is a department or board of the city within the terms of G. L. (Ter. Ed.) c. 44, § 31A, as inserted by St. 1941, c. 473, § 1. But that case merely decided as to that subject matter that a school committee is a department or board within the meaning of G. L. (Ter. Ed.) c. 43, § 29, requiring the approval of the mayor of a contract made by the school committee for the transportation of pupils. It is pointed out, however, in *Ring* v. *Woburn*, 311 Mass. 679, 688, 689, that the expense incurred for transportation of pupils is not one for which a city is bound under G. L. (Ter. Ed.) c. 71, § 34, inserted by St. 1939, c. 294, to provide the amount estimated therefor by the school committee, but that the authority to enter into

a contract for their transportation is conferred by St. 1932, c. 271, § 6, amending G. L. c. 40, § 4, dealing with the power of a city to make certain contracts. And in the *Eastern Massachusetts Street Railway* case at page 237 the court said that "Contracting for the furnishing of transportation of school children bears only a secondary relation to education. It is a matter which could have been committed to some other board or officer without destroying the symmetry of the established system of school government," and the court was careful to point out that it was not deciding that the employment of a teacher at a salary of more than $500 would require the approval of the mayor under G. L. (Ter. Ed.) c. 43, § 29. (Page 238.)

We are of opinion that a school committee, acting within the scope of its powers and duties under G. L. (Ter. Ed.) c. 71 as amended, is not within the meaning of and is not controlled by the provisions of G. L. (Ter. Ed.) c. 44, § 31A, inserted by St. 1941, c. 473, § 1, when presenting to the mayor its estimates of sums that the city is bound to furnish under G. L. (Ter. Ed.) c. 71, § 34, inserted by St. 1939, c. 294.

The question as to the relative powers and duties of the mayor and city council on one side, and of the school committee on the other side, under the provisions of law relative to the budget as applied to the administration of the public school system, was fully discussed in *Leonard* v. *School Committee of Springfield*, 241 Mass. 325. In that case it was pointed out that the "policy of the Commonwealth from early times has been to establish a board elected directly by the people separate from other governing boards of the several municipalities and to place the control of the public schools within the jurisdiction of that body unhampered as to details of administration and not subject to review by any other board or tribunal as to acts performed in good faith." (Page 329.) And in that case it was held that the "municipal indebtedness act . . . cannot be construed as reaching outside its proper territory over into the well recognized field of public school education equally established and retained as a separate statutory domain, and obliterating the functions of the school com-

mittee in important particulars." (Page 331.) And in *Decatur* v. *Auditor of Peabody*, 251 Mass. 82, 88, 89, speaking of G. L. c. 71, § 34, which provided a different remedy from the current § 34 for enforcing the obligation of a city to provide the sums estimated by the school committee under c. 71, but the purpose of which was the same as the present § 34, the court said: "It is clear that the design of § 34 was to make the observance of certain requirements of G. L. c. 71 imperative upon municipalities and not subject even to the limitations of the provisions of law as to the budget. This compulsion imposed by the General Court is peremptory and unequivocal. It is something more than the simple permission to one board of public officers to make contracts, or to fix salaries. Those are to be found in other statutes. See, for example, G. L. c. 111, § 27. All such general provisions are subject to appropriations made under the provisions of the budget law. With reference to public schools there is both the power in the school committee and the express legislative mandate to the municipality to 'raise by taxation' the necessary money. It follows from the provisions of said § 34, touching the public schools, that it is the duty of those framing the budget under G. L. c. 44, § 32, to conform to G. L. c. 71, § 38, and to provide for the salaries of teachers in the public schools as voted by the school committee."

It may be noted that the failure of the school committee to file its estimates before December 5, 1941, cannot have caused inconvenience, since the new mayor did not take office until January 5, 1942, and thus had the committee's estimates in hand before the commencement of the forty-five-day period within which he was required, by G. L. (Ter. Ed.) c. 44, § 32, as amended by St. 1941, c. 473, § 2, to prepare the budget for the ensuing year and present it to the city council. It may also be observed that he dealt with the estimates filed by the school committee and provided in the budget for appropriations for school purposes in excess of those for the previous year, but in a less amount than that estimated by the school committee, and that the city council acted upon the same.

We think that it cannot be said properly that by the delay in question the municipality, in dealing with the estimates of the committee, could so act as to disregard the obligation imposed upon it by legislative mandate to appropriate the sums estimated by the committee as necessary for the purposes provided for in G. L. (Ter. Ed.) c. 71, as amended, having to do with the "well recognized field of public school education . . . established and retained as a separate statutory domain." *Leonard* v. *School Committee of Springfield*, 241 Mass. 325, 331.

It follows from what we have said that the order made by the judge for a final decree dismissing the petition must be reversed, and that a final decree must be entered ordering the city and all its officials whose action is necessary thereto to provide in the manner required by G. L. (Ter. Ed.) c. 71, § 34, inserted by St. 1939, c. 294, the sum of $28,701.78, the amount of the deficiency in the appropriation for school purposes for the year 1942 under c. 71, plus twenty-five per cent thereof.

*Ordered accordingly.*