EDNA T. YOUNG & others *vs.* CITY OF WORCESTER.

Worcester. February 10, 1956. — March 14, 1956.

Present: QUA, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*School and School Committee. Municipal Corporations,* Municipal finance.

A vote by the school committee of a city increasing the salary of the superintendent of schools, adopted and delivered to the city manager long after he had submitted the annual city budget for 1954 to the city council, although before the council acted on the budget, and the adoption by the council of the budget including for the superintendent's salary only the amount requested in the school committee's original estimates without provision for such increase, did not afford ground for maintenance of a proceeding under G. L. (Ter. Ed.) c. 71,

§ 34, as appearing in St. 1939, c. 294, based on an alleged "deficiency" in the appropriation for the superintendent's salary for that year; the facts that subsequent to the adoption of the budget the council appropriated a part of such increase from a "wage stabilization" account included in the budget and "not under the control of the school committee" and that there was sufficient in that account to provide for the full increase were immaterial.

PETITION, filed in the Superior Court on September 3, 1954.

The suit was heard by *Meagher, J.*

*A. Kenneth Carey,* for the petitioners.

*Henry P. Grady,* Assistant City Solicitor, for the respondent.

WHITTEMORE, J.   This is a taxpayers' petition to require the city of Worcester to provide the amount of a deficiency in its appropriation for schools for the year 1954 and an additional sum equal to twenty-five per cent of the deficiency, all as provided by G. L. (Ter. Ed.) c. 71, § 34, as appearing in St. 1939, c. 294.   The specification of the petition is that the amount requested by the school committee by way of salary of the superintendent of schools was $15,000 and the city appropriated only $12,000.   The case was heard on a statement of agreed facts.   A final decree was entered dismissing the petition.   There was no error.

The school committee's estimates and requests for the year 1954 as submitted to the city manager on January 25, 1954, included an item of $10,800 for salary of the superintendent of schools.   The budget for the city as submitted by the city manager to the city council on February 17, 1954, also included this item.   On April 1, 1954, the school committee passed a vote raising the salary of the superintendent of schools to $15,000 per year effective April 1, 1954.   This vote was delivered to the city manager on April 2, 1954, before the city council meeting on that day. The city council on April 2, 1954, adopted the budget for the city for the year 1954, inclusive of the item of $10,800 for salary of superintendent of schools and without provision for the increase which would have been required in order to implement the committee's vote of April 1.

In the budget there was "an item for wage stabilization not under the control of the school committee." On April 26, 1954, the city manager recommended to the city council that it appropriate the sum of $2,800 by way of transfer from the account of wage stabilization to provide funds for the increase in salary of the superintendent of schools. On May 4, 1954, the city council, following this recommendation only in minor part, appropriated the sum of $702.61 from the wage stabilization account to provide funds for the salary of the superintendent in an amount not to exceed $12,000 per year effective May 4, 1954. The city council, upon recommendation of the city manager, on June 22, 1954, appropriated to the school committee from the wage stabilization account certain items of the committee's estimates and requests which had been eliminated from school committee items in the city budget as originally submitted by the city manager. At all times after April 2, 1954, the amount in the wage stabilization account which could have been appropriated for the increase to the superintendent was sufficient to have provided the full increase.

The school committee had the power and right to fix the salary of the superintendent of schools. *Ring* v. *Woburn*, 311 Mass. 679, 690, and cases cited.

The provisions of G. L. (Ter. Ed.) c. 44, § 31A, inserted by St. 1941, c. 473, § 1, requiring that "Every officer of any city except Boston having charge of, or jurisdiction over, any office, department or undertaking, requesting an appropriation shall, between November first and December first of each year, furnish . . . detailed estimates of the full amounts deemed necessary for the then ensuing year," do not apply to the school committee to require that it submit its estimates before December 1. *Hayes* v. *Brockton*, 313 Mass. 641. See *Decatur* v. *Auditor of Peabody*, 251 Mass. 82. In *Hayes* v. *Brockton* the estimates were submitted on December 5 and, as the opinion points out (page 650), the delay could not have caused inconvenience.

That case does not hold that there is no time after which, in the absence of estimates for the current year, there will

be an end, for that year, to the obligation of the municipality to provide whatever funds the school committee within its powers may request. Obviously there must be such a date. The statutes do not expressly fix the time. But they do contain provisions which suggest when it should be if the statutory purposes are to be fully achieved.

The city manager, having in this aspect the duties of the mayor (G. L. [Ter. Ed.] c. 43, § 104, inserted by St. 1938, c. 378, § 15), is required to submit to the city council "the annual budget" within forty-five days after the annual organization of the city government. G. L. (Ter. Ed.) c. 44, § 32, as appearing in St. 1941, c. 473, § 2, as amended. The annual budget comes into existence as a total concept, subject to being dealt with by the city government, at the time when it is thus submitted by the executive to the city council. From and after this time the total of the budget exists as a guide to the city council in determining what to do with the appropriation items therein which are subject to its control, and whether to ask the mayor for a recommendation for an appropriation for a purpose not included therein, or, in the absence of such a recommendation by the mayor, to make upon its own initiative an appropriation for such a purpose (G. L. [Ter Ed.] c. 44, § 33, as appearing in St. 1941, c. 473, § 3). The total of the budget is also a guide to the mayor in determining whether to make recommendations for increases therein (§ 32). In order for the council to have the benefit of all of the period of forty-five days after receipt of the budget, which the statute provides, to determine what to do with controllable items of appropriation it needs to know throughout that entire period the total of the recommended budget as well as the total of the fixed items such as school department estimates, which are beyond its control. School department expenditures are often the largest single group of items of municipal expenditure and are necessarily a most important part of any budget.

The statute in directing the mayor to submit "the annual budget" as recommended by him has provided in effect

that the city council shall know the total of the budget and the amount of the items in it throughout the entire period given to the council for considering the budget. It is expressly provided by § 33A, as appearing in St. 1947, c. 298, § 1, as amended, that "The annual budget shall include sums sufficient to pay the salaries of officers and employees fixed by law or by ordinance." We think the implication of the statute is to make the same provision for the other large class of fixed items, the school committee estimates. The executive cannot "submit to the city council the annual budget" if he does not have before him the school department estimates which are required items therein.

On the general point of the importance of the submission of the recommended annual budget see *Allen* v. *Cambridge,* 316 Mass. 351, 357; *James* v. *Mayor of New Bedford,* 319 Mass. 74, 77.

The fact that the particular items here are small and relatively inconsequential is immaterial. We hold, on the implications of the statute, that estimates from the school committee, which are to entail a required appropriation whether large and principal, or small and supplementary, must all be in the executive's hands by the time he brings into existence the recommended "annual budget" by submitting it to the city council. This means that the school committee, in all cases, surely will have until the date of the annual organization of the city government to submit its estimates since the forty-five days within which the mayor must submit the annual budget runs from that date. The fact that in most if not all instances the committee will have additional time of uncertain length within which to act, depending upon when within the forty-five day period the executive submits the budget, does not speak for a different construction of the statute. Having held in *Hayes* v. *Brockton,* 313 Mass. 641, that the express provisions and implications of G. L. (Ter. Ed.) c. 71 control over the provisions of G. L. (Ter. Ed.) c. 44, § 31A, inserted by St. 1941, c. 473, § 1, as to time of submission of estimates, we are now required to determine when by necessary implication

of c. 44 the school committee estimates must nevertheless be submitted. The implications of c. 44 point surely to the date of the submission of the budget to the city council, and we may not, in effect, legislate to provide differently. Since, as we hold, the executive cannot submit "the annual budget" without the school committee items, a submission earlier than just prior to the expiration of the forty-five day period which omitted these items, and was made without express request to the committee for the items, reasonably made as to time, would not be a compliance with the statute. And a submission by the committee so near to budget submission time as to deprive the executive of an opportunity to consider its effect on the budget total might not be timely. See *Hayes* v. *Brockton,* 313 Mass. 641, 650. It appears likely that practices of reasonable accommodation to mutual convenience will evolve under this rule, and we leave a more precise statement as to timeliness to the particular case wherein it may be required, if such shall arise.

This rule does not derogate from the power and right of the school committee as now firmly established and well understood. *Leonard* v. *School Committee of Springfield,* 241 Mass. 325. *Callahan* v. *Woburn,* 306 Mass. 265. *Davis* v. *School Committee of Somerville,* 307 Mass. 354. *Watt* v. *Chelmsford,* 323 Mass. 697. *School Committee of Gloucester* v. *Gloucester,* 324 Mass. 209. *Casey* v. *Everett,* 330 Mass. 220.

The appropriation of the salary stabilization fund is immaterial to the issue. If through such a device the executive and city council are able legally to make salary increases more easily than would otherwise be the case, on which point we express no opinion, that does not increase the power of the school committee to demand appropriations after the annual budget has been submitted. The wording of the provision of G. L. (Ter. Ed.) c. 71, § 34, as appearing in St. 1939, c. 294, giving the extraordinary remedy in respect of school department appropriations is important. The statute says, "Upon petition . . . alleging that the

amount necessary . . . for the support of public schools
. . . has not been included in the *annual budget appropriations* for said year, said court [the Superior Court] may
determine . . ." (emphasis added). No relief is given for
failure to make supplementary appropriations.

That the executive and council respectively may recommend and make supplementary appropriations in their discretion in partial implementation of the school committee's
post budget action does not derogate from the school committee's power and right as given by the statute.

*Final decree affirmed.*