UNA D. HILLIKER & others *vs.* CITY OF SPRINGFIELD.

Hampden.    March 2, 1965. — June 11, 1965.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*School and School Committee.    Contract,* What constitutes, With teacher.

After the school committee of a city, late in a year, had voted sundry salary increases to be effective in September of the ensuing year and had made provision for the increases in the school estimates for the ensuing year submitted by the committee to the mayor and city auditor, it was within the power of a newly elected school committee, early in the ensuing year, to reduce or eliminate the increases, thereby reducing the total amount of the school estimates for that year, and, where such reduced total amount was included in the city budget for that year, there was no "deficiency" in the school appropriations for that year within G. L. c. 71, § 34.    [357]

Even if the school committee of a city, after voting various salary increases, voted to reduce or eliminate them "in the interest of the financial well-being" of the city, there was no merit in a contention that the later action of the committee was an abuse of its authority in that the committee failed to consider the welfare of the schools where no such failure appeared.    [357]

---

[4] "1.    Did the oral statements of the defendant made to the plaintiff in September 1954 constitute, as a matter of law, a warranty?

"2.    What is the legal effect, if any, of the written statements made by the defendant to the plaintiff on February 4, 1955, after the loss at sea had occurred?

"3.    Did the plaintiff rely upon the facts contained in the alleged warranty?

"4.    Must a warranty in the field of maritime insurance be more than an oral conversation or correspondence written subsequent to the date of the making of the alleged warranty?

"5.    What elements of damage are recoverable in an action based upon such an alleged breach of warranty?"

After the school committee of a city had voted sundry salary increases to school personnel, to be effective in September of the ensuing year, but early in the ensuing year had voted to reduce or eliminate the increases, there was no merit in a contention that the later action of the committee violated contractual rights of the school personnel based on the increases originally voted where it did not appear that any such contracts had been made with them.   [357–358]

PETITION filed in the Superior Court on May 1, 1962.

The petitioners appealed from a final decree dismissing the petition entered after hearing by *Beaudreau,* J.

*Joseph G. Crane* (*William J. O'Keefe* with him) for the petitioners.

*John J. O'Connor,* Associate City Solicitor, for the respondent.

SPALDING, J.   This is a petition brought under G. L. c. 71, § 34, as amended, by ten or more taxable inhabitants of the city of Springfield.   The petitioners allege that the amounts necessary for the support of the city's schools for the year 1962 were not included in the annual budget for that year; they ask that the amount of the deficiency be determined and that the city be ordered to provide a sum equal to the deficiency, together with a sum equal to 25% thereof.

The case was heard by a judge of the Superior Court who died before rendering a decision.   Thereafter the case was submitted to another judge of that court on the testimony and exhibits introduced before the first judge.   The second judge made a report of the material facts found by him.   The evidence is reported.

Facts found by the judge include the following:   On December 26, 1961, pursuant to a vote of the school committee of the city, an estimated budget of expenditures in the amount of $12,862,452 was submitted by it to the mayor and city auditor in accordance with G. L. c. 44, § 31A.   Included in this amount was an estimate of $1,016,353 for maintenance of buildings.   As to this amount, it was expressly provided that it could be omitted if the 1962 school committee did not choose to include it.   Since the 1962 committee did not so choose, we are not concerned with

this item. The estimated budget, as thus reduced, was $11,846,099, and it is this sum which is the subject of the present controversy.

Prior to the submission of the estimated budget the 1961 school committee had passed certain votes increasing the salaries of various employees of the department. One of these votes (passed on December 4, 1961) increased, effective September 1, 1962, "all the minimum and maximum salaries at all levels by $300" and in addition granted "an across-the-board increase of $350 within the new maximums to all teachers." The 1962 school committee on January 18, 1962, rescinded the foregoing vote and voted to substitute a "$200 minimum and maximum salary increase and an across-the-board increase of $200 to all teachers."

On December 4, 1961, the 1961 committee "granted an across-the-board raise equal to one annual increment to all supervisors, directors, principals and assistant principals, and all on the supervisory salary scale." The 1962 committee rescinded this vote.

On December 11, 1961, the committee for that year voted to establish the minimum salary for long term substitutes at $4,700, effective September 1, 1962. The 1962 committee reduced that amount to $4,600.

The 1961 committee on December 11 also voted to establish the following rates for on-call substitute teachers: $18.50, $19.50 and $20.50 per day, effective September 1, 1962. The 1962 committee reduced those rates to $18, $19 and $20, respectively.

By reason of these votes the 1962 committee reduced the amount ($11,846,099) contained in the 1961 committee's estimate by $223,890. This reduced amount was put in the annual budget by the mayor in April, 1962.

On January 1, 1962, a new school committee was elected under a new Plan A charter. G. L. c. 43, §§ 46–55. Seven members of the 1961 committee were no longer members of the new committee either because they were defeated or because they did not seek reëlection. A new mayor, who

Hilliker *v.* Springfield.

under the city's charter became chairman ex officio of the school committee, took office in 1962.

The judge found that the 1962 committee did not surrender its responsibility under G. L. c. 71, § 34, to the mayor; nor was the vote the result of any improper influence exerted by him. The judge viewed the case as presenting the following questions: 1. Could the 1962 school committee make changes in the estimates submitted by the 1961 committee? 2. Did the salary schedule voted in December by the 1961 committee to take effect nine months later constitute a contract with the teachers which could not be impaired by the action of the 1962 committee? As to the first question, the judge ruled that the members of the 1962 committee were not bound by the action of the 1961 committee. With respect to the second issue, he stated that the record afforded no basis for a determination that any contractual rights had been violated. A decree was entered dismissing the petition. The petitioners appealed.

The petitioners contend that the 1962 committee was without authority to alter the estimate of expenditures made by the 1961 committee, thereby affecting salary appropriations. In neither our statutes nor our decisions do we find any basis for such a contention. Nor do we find persuasive the petitioners' argument in support of their position. They submit that the 1961 committee was under a duty to present an estimate of expenditures and that this was the only required estimate. From this, they conclude that the city was required under G. L. c. 71, § 34,[1] to appropriate funds for the salary increases which were later reduced or eliminated by the 1962 committee.

That the power to determine teachers' salaries is vested

---

[1] This section reads in relevant part: "Every city . . . shall annually provide an amount of money sufficient for the support of the public schools as required by this chapter. Upon petition to the superior court, sitting in equity, against a city . . . brought by ten or more taxable inhabitants thereof, . . . alleging that the amount necessary in such city . . . for the support of public schools as aforesaid has not been included in the annual budget appropriations for said year, said court may determine the amount of the deficiency, if any, and may order such city and all its officers whose action is necessary to carry out such order, . . . to provide a sum of money equal to such deficiency, together with a sum equal to twenty-five per cent thereof."

solely and absolutely in the school committee is not to be
doubted. *Hayes* v. *Brockton*, 313 Mass. 641. *O'Brien* v.
*Pittsfield*, 316 Mass. 283. *Watt* v. *Chelmsford*, 323 Mass.
697, and cases cited. In making this determination, the
school committee was not required to submit a budget, in-
cluding estimated salaries, in 1961. The time limits pro-
vided in G. L. c. 44, § 31A,[2] do not apply to school commit-
tees. *Hayes* v. *Brockton, supra,* at 649–650. *Young* v.
*Worcester,* 333 Mass. 724, 726. See *Illig* v. *Plymouth,* 337
Mass. 239, 241. The estimated budget need only be season-
ably submitted with reference to the date on which the bud-
get is presented to the city council. *Young* v. *Worcester,*
*supra,* at 728–729. We thus find nothing in the statutory
pattern of chapters 44 and 71 which indicates that the 1962
committee could not modify its budget request by reducing
estimated salary schedules.

The 1962 committee was not bound by the vote of the
1961 committee. See *Murphy* v. *Cambridge,* 342 Mass. 339,
341. We, therefore, are of opinion that the 1962 committee
had authority to establish new salary schedules, thereby re-
ducing the amount which the city was obligated to appro-
priate under G. L. c. 71, § 34.

The petitioners also challenge the action taken by the
1962 committee on other grounds. They assert that the
committee abused its authority in making salary reductions
"in the interest of the financial well-being of the City of
Springfield." This contention must fail. Even if it be
assumed that the committee acted with this purpose in
mind, the evidence does not establish that the committee
failed to consider the welfare of the schools.

Other points raised by the petitioners relate to the ex-
istence of contracts between the teachers and the commit-

---

2 This section provides: "Every officer of any city . . . having charge of,
or jurisdiction over, any office, department or undertaking, requesting an
appropriation shall, between November first and December first of each year,
furnish the mayor and the city auditor . . . on forms provided by the city
auditor or officer having similar duties, and approved by the division of ac-
counts in the department of corporations and taxation, detailed estimates of
the full amounts deemed necessary for the then ensuing year for the ordinary
maintenance of the office, department or undertaking under his charge or
jurisdiction, and for expenditures other than the ordinary maintenance, . . . ."

tee under which it is alleged they had a right to the salary increases voted by the 1961 committee. But, the petitioners have failed to establish that such contracts had ever been made. It, therefore, is unnecessary to consider contentions touching the rescission of these "contracts" and a purported unconstitutional impairment of the obligations of contract. It is also unnecessary to decide whether such questions are open in a proceeding brought under G. L. c. 71, § 34. In any event, this case, in its contract aspect, is controlled by *McDevitt* v. *School Comm. of Malden,* 298 Mass. 213, and *Murphy* v. *Cambridge,* 342 Mass. 339, 341.

Other contentions based on an alleged exercise of undue influence by the mayor, an unlawful delegation of authority by the school committee, the rights of teachers under G. L. c. 71, § 43, and the disbursement of Federal funds are without merit and do not deserve discussion.

Since the petitioners have failed to establish that there is a deficiency under G. L. c. 71, § 34, the decree dismissing the petition must be affirmed.

*So ordered.*