EDNA J. CARROLL & others *vs.* CITY OF MALDEN.

Middlesex. December 13, 1973. — December 30, 1974.

Present: HALE, C.J., KEVILLE, GRANT, & ARMSTRONG, JJ.

*School and School Committee. Municipal Corporations,* Municipal finance. *Equity Jurisdiction,* Support of public schools.

A school committee's submission of its annual budget to the mayor one week before he was required by G. L. c. 44, § 32, to submit it with the entire city budget to the city council was not so late as to preclude the mayor's examination of the school budget and to justify his submission to the council of the school budget of the previous year, where the mayor had prior knowledge of the content of the school budget, made no request for earlier submission of it, and made no attempt to examine it in the week before the deadline. [737-741]
Discussion of the powers of school committees. [741-744]
Under G. L. c. 71, §§ 34 and 71, a city council had to comply with requests of a school committee for funds for a feasibility study of a "Community Schools" program. [744]

BILL IN EQUITY filed in the Superior Court on June 5, 1972.
The suit was heard by *Chmielinski,* J.
*Jeffrey M. Freedman* for the plaintiffs.
*Philip G. Chesley,* Assistant City Solicitor, for the city of Malden.
KEVILLE, J. This bill in equity marks the culmination of a five year dispute between the mayor of the city of Malden and the school committee (committee). The

controversy centers on the alleged failure of the committee to submit seasonably its budget estimates for the annual support of the public schools to the mayor within the forty-five day period prescribed by G. L. c. 44, § 32, as amended through St. 1953, c. 79,[1] in which the mayor must submit his estimate of the entire city budget to the city council (council) for its approval. The bill was brought by ten or more taxable inhabitants of the city under G. L. c. 71, § 34.[2] The plaintiffs have appealed from a final decree dismissing the bill.

We have before us a report of the evidence, an agreed statement of facts (which does not purport to include all the facts and is, therefore, not to be considered a case stated, see *Ring* v. *Woburn,* 311 Mass. 679, 681 [1942]) and the judge's findings, rulings and order for decree adopted by him as his statutory report of material facts. In the circumstances all questions of law, fact and discretion are open for our decision. We may find facts not expressly found by the judge. If convinced that he was plainly wrong, we may find facts contrary to his findings.

---

[1]"Within forty-five days after the annual organization of the city government . . . the mayor shall submit to the city council the annual budget which shall be a statement of the amounts recommended by him for the proposed expenditures of the city for the then current year." (General Laws c. 44, § 32, was amended by St. 1969, c. 849, §§ 59, 60, and made effective July 1, 1971, by St. 1969, c. 849, § 79. The effective date of the 1969 amendment was changed to July 1, 1972, by St. 1970, c. 194, § 4, and then postponed until July 1, 1973, by St. 1971, c. 766, § 29. Because of these extensions of its effective date, the 1969 amendment to § 32 does not apply to the case before us.)

[2]General Laws c. 71, § 34, in pertinent part provides that "[e]very city . . . shall annually provide an amount of money sufficient for the support of the public schools as required by this chapter. Upon petition to the superior court, sitting in equity, against a city or town, brought by ten or more taxable inhabitants thereof . . . alleging that the ,amount necessary in such city . . . for the support of public schools . . . has not been included in the annual budget appropriations for said year, said court may determine the amount of the deficiency, if any, and may order such city . . . to provide a sum of money equal to such deficiency, together with a sum equal to twenty-five percent thereof."

*Juergens* v. *Venture Capital Corp.* 1 Mass. App. Ct. 274 (1973).

The facts may be stated as follows: The Malden city government (see n. 1) was organized for the year 1972 on January third. The committee submitted its 1972 budget requests to the mayor on February tenth. The total request by the committee was for $7,759,930. On the following morning the mayor, having determined that he had insufficient time to consider the school budget during the week remaining prior to the expiration of the forty-five day period prescribed for his submission of the entire city budget to the council (see n. 1), directed the controller to assemble and substitute the school expenditures for 1971 for the budget proposed by the committee. That day, February eleventh, the city budget, including the substituted school budget, was sent to the printer. On February fifteenth, the mayor submitted this budget to the city council which adopted it on March twenty-eighth. The total sum thus appropriated for schools was $745,939 less than the amount requested by the committee.

It was the mayor's opinion that the committee had been tardy in submitting its annual budget requests in 1968, 1969, 1970 and 1971. The mayor had, in those years, protested that late submission prevented his examination of the requests, and he had in each of those years, as in 1972, submitted the committee's expenditures for the previous year rather than the amount requested by the committee. Later in each of those years, he had submitted a supplementary budget for the committee following a study of its requests.

Following this practice in 1972, the mayor submitted a supplementary request for the committee in the sum of $728,939 which was adopted by the council. However, including the supplement, the school budget for 1972 fell short of the amount originally requested by the committee by $17,000. Of the deficiency, $7,000 was earmarked for a feasibility study of a "Community Schools"

program, so called, which the committee claims to be authorized under the provisions of G. L. c. 71, § 71. The remaining $10,000 was part of the committee's OM-7 account entitled "Maintenance."[3]

The reason assigned by the committee at the hearing on this bill for the delay in the submission of its budget to the mayor was that it had been in collective bargaining negotiations with the teachers' association on the question of teachers' salaries since the beginning of the school year. It had hoped to conclude these negotiations successfully so that exact salary figures might be included in the budget. However, the committee was finally obliged to submit estimated figures for teachers' salaries to the mayor because it had not yet been able to reach an agreement with the teachers. Almost all other items in the committee's estimates had been ready well in advance of the submission date. Although he found no reason for the delay, the judge did find "[t]hat the negotiations with the . . . teachers as to salary adjustment . . . [were] not the reason for presenting the budget so late to the mayor." We need not decide on this record whether the reason assigned by the committee for its delay was sufficiently persuasive for us to have reached a different conclusion from that of the judge since it is only one of the factors for consideration. The decisive question is whether the committee submitted its estimates so late as to preclude their consideration by the mayor prior to the time when he was required to submit the entire city budget to the council.

The mayor was an ex-officio member and a former member of the committee. He attended the committee

---

[3] The plaintiff does not argue and we need not discuss the propriety of the deletion of the maintenance item, for the mayor, during the hearing on this bill, conceded his lack of authority to make it. His assigned reason for this deletion was to prevent the instant case from becoming "moot" in order that the question could be satisfactorily answered "as to what constitutes a timely submission and a reasonable amount of time for the mayor and city council to consider the budget requests."

meeting on February eighth at which the budget estimates were adopted. At that time, and prior thereto in 1972, he made no specific request that these figures be submitted to him at an earlier date. Nor did he at that time disclose to the committee his apparent feeling that a seasonable time for the submission of the school budget had already passed. At the February eighth meeting he expressed only his objection to the "Community Schools" item and his intention to delete it from the budget. The evidence reveals no effort on the mayor's part to scrutinize the budget estimates submitted by the committee on February tenth before substituting the school expenditures for the preceding year, although a week remained within which he could have met the statutory deadline.

The committee was not required as were other municipal departments to file its budget estimates between November first and December first for the ensuing year. G. L. c. 44, § 31A. *Young* v. *Worcester,* 333 Mass. 724, 726 (1956). *Hilliker* v. *Springfield,* 349 Mass. 353, 357 (1965). However, the committee was obliged to submit them to the mayor at some time prior to the expiration of the forty-five day period following the organization of the city government (*Young* v. *Worcester, supra,* at 729) within which he was obliged to submit the total city budget to the council. *Hayes* v. *Brockton,* 313 Mass. 641, 650 (1943). (See n. 1.) Following receipt of the budget from the mayor, the council had forty-five days in which to study and to act upon the budget. G. L. c. 44, § 32 (2), as amended through St. 1953, c. 79. (See n. 1.) A precise deadline has not been established for the submission of the committee's estimates to the mayor either by statute or judicial decision. See *Young* v. *Worcester,* 333 Mass. at 727. It has been stated that "Since . . . the executive cannot submit 'the annual budget' without the school committee items, a submission earlier than just prior to the expiration of the forty-five day period which omitted these items, and was made without express request to the committee for the

items, reasonably made as to time, would not be a compliance with the statute. And a submission by the committee so near to budget submission time as to deprive the executive of an opportunity to consider its effect on the budget total might not be timely." *Young* v. *Worcester, supra,* at 729.[4]

Without more precise criteria to guide us on the question of timeliness, we do not conclude that the committee's submission of the budget was so late that it precluded adequate consideration by the mayor before the deadline. Nor did it justify his substituting the preceding year's expenditures for the current estimate submitted by the committee on February tenth. As an ex-officio member of the committee, the mayor had prior knowledge of the content of the estimates. Furthermore, there was no indication that he requested an earlier submission of the 1972 estimates although he had ample opportunity to do so. Nor did he attempt to study the estimates in the week remaining prior to the deadline for the submission of the city budget to the council.

We turn to the remaining question whether the deletion of $7,000 for a study of the use of school buildings for a community schools program was warranted. The judge ruled that such programs "are not any part of the authority vested in school committees under Chapter 71, Section 34."[5] The only contention offered by the

---

[4] The optimistic prediction there voiced by the court has not materialized, at least in the controversy between the mayor and the committee in the case before us, viz., that "[i]t appears likely that practices of reasonable accommodation to mutual convenience will evolve under this rule, and we leave a more precise statement as to timeliness to the particular case wherein it may be required, if such shall arise." The statutory ambiguity would appear to call for corrective legislation.

[5] The case appears to have been tried and was argued to us on the footing that what the committee wanted to study was the feasibility of conducting programs encompassed within c. 71, § 71, and that this was understood by the mayor and council.

city is that the committee had neither express nor implied authority to "appropriate" money for such a program.

The question requires an examination of the relationship between G. L. c. 71, § 34, and G. L. c. 71, § 71.[6] Prior to St. 1826, c. 143, § 5, which inaugurated the school committee system, the duty to appropriate money for public schools and to make educational policy at the local level was lodged in the town meeting. With the advent of the school committee system, the duty to appropriate remained in the town meeting but the right to make educational policy gradually shifted to the school committee. In the ensuing century and a half, a strong tradition of school committee autonomy has developed supported by judicial decision. *Casey* v. *Everett,* 330 Mass. 220, 222-223 (1953). *Bell* v. *North Reading,* 363 Mass. 505, 510 (1973). As noted in the *Casey* decision, *supra,* at 222-223, G. L. c. 71, § 34, implicitly recognizes that the committee's autonomy in matters pertinent to the management of public schools can be preserved only if the local legislative body is barred from exercising financial veto power. "The school committee has no power to tax or to appropriate or borrow money, and G. L. (Ter. Ed.) c. 71, § 34, clearly contemplates that the governmental body which has such power may choose to exercise it in derogation of the requirements of the general law governing schools and school committees." Under § 34, "Every city . . . shall annually provide an amount of money sufficient for the support of the public schools as *required by this chapter*" (empha-

---

[6] General Laws c. 71, § 71, in pertinent part reads as follows: "For the purpose of promoting the usefulness of public school property the school committee of any town may conduct such educational and recreational activities in or upon school property under its control, and, subject to such regulations as it may establish, and, consistently and without interference with the use of the premises for school purposes, shall allow the use thereof by individuals and associations for such educational, recreational, social, civic, philanthropic and like purposes as it deems for the interest of the community."

sis supplied), and the section authorizes a taxpayers' suit
to assure the appropriation of the "necessary" funds.

In *Pirrone* v. *Boston,* 364 Mass. 403, 406-407 (1973),
the court stated that "[t]he Legislature has required that
every city and town must provide the funds necessary
for the support of local schools, and has authorized the
device of the ten taxpayer suit as a means of enforcing
that requirement.  G. L. c. 71, § 34.   [The Supreme
Judicial Court] . . . has consistently interpreted § 34 as
permitting no discretion to the local appropriating
authority to reduce the total amount of funds which has
been determined by the school committee to be necessary
for school purposes. . . . [T]he city council or town
meeting must appropriate the full amount requested by
the school committee (at least to the extent such funds are
'necessary' for c. 71 purposes)."

It has been held that within a wide limit "necessary,"
as applied to the funds required for school support,
means "reasonably deemed *by the committee* to bear a
relation to its statutory mandate" (emphasis supplied).
*Day* v. *Newton,* 342 Mass. 568, 570 (1961), and cases
cited.   Contrast *Eastern Mass. St. Ry.* v. *Mayor of Fall
River,* 308 Mass. 232, 237 (1941).   Also, it is not the
function of the court to inquire "whether the budget
presented by the school committee was an expedient one.
*Ring* v. *Woburn,* 311 Mass. 679, 683 [1942].   *Graves* v.
*Fairhaven,* 338 Mass. 290, 293 [1959].   The standard
remedy against an extravagant or otherwise misguided
school committee is simply to turn the members out of
office as their terms expire."   *Bell* v. *North Reading,* 363
Mass. 505, 510-511 (1973).

The scope of the committee's authority to request
appropriations is substantially defined by its powers and
duties under c. 71.   See *Decatur* v. *Auditor of Peabody,*
251 Mass. 82, 86 (1925); *Eastern Mass. St. Ry.* v. *Mayor
of Fall River, supra; Ring* v. *Woburn,* 311 Mass. 679
(1942).   The inclusion of § 71 within c. 71 is indicative

of legislative intent to cloak the committee with authority to utilize school property for the activities described in that section and to treat its provisions in the same manner accorded other provisions of that chapter, viz., that activities authorized by c. 71 be funded by the city pursuant to the mandatory language of § 34.

The stated purpose of § 71 is to promote "the usefulness of public school property." It in effect requires, inter alia, the committee "consistently and without interference with the use of the premises for school purposes, to turn over buildings erected under peremptory statutory requirements as public school buildings to individuals and associations." *Warburton* v. *Quincy,* 309 Mass. 111, 115 (1941). See G. L. c. 71, § 71B, inserted by St. 1968, c. 283.[7]

In addition to their stated purpose, the provisions of § 71 (enacted by St. 1911, c. 367, § 1) were evidently designed to promote broader citizen participation in more comprehensive educational programs at the local level. Utilization of school property for the purposes of this section has been characterized as compliance "with an express legislative mandate." *Warburton* v. *Quincy, supra,* at 117.

While § 71 does not specifically authorize a feasibility study of community schools programs, for the committee to embark upon such a program without a study might properly be regarded as irresponsible. In *Ring* v. *Woburn,* 311 Mass. at 687, the court determined that the power to employ school janitors and custodians was necessary and implied from the express duty of the committee to care for school property. The court stated, "[I]t is a well established general rule that when a general power is given or duty enjoined, every particular

---

[7] A school committee may offer adult physical fitness programs to be held in the gymnasium of any school at any time during which such gymnasium facilities are not being used for school purposes.

power necessary for the exercise of the one, or the performance of the other, is given by implication."

The legislative history of that section gives further indication that city and town funding was originally contemplated for § 71 purposes. Statute 1911, c. 367, § 1, provided for additional uses of school property "for which no admission fee is charged." Statute 1912, c. 320, struck this language. Statute 1913, c. 391, § 1, restored it; but by St. 1914, c. 538, § 1, it was again struck. While there is presently no express prohibition against the charging of fees (see now G. L. c. 71, § 71C, inserted by St. 1973, c. 800[8]), it is apparent that fees need not be charged, and there is no indication of legislative intent that activities authorized by § 71 need be self-sufficient. We conclude that authority to conduct a feasibility study was implicit in § 71 and that it was the obligation of the city to fund the study at the request of the committee under § 34.

It follows from what we have said that the final decree dismissing the bill must be reversed and a final decree entered ordering the city and its officials, whose action is required to carry out that order under the provisions of G. L. c. 71, § 34, to provide in the manner required by that section the sum of $17,000 plus twenty-five percent thereof.

*So ordered.*

---

[8] All moneys received by the school committee in connection with the conduct of community school programs, so designated by prior vote of said committee, shall be deposited with the treasurer of the town or city. The school committee may expend, from such receipts and without further appropriation, any sums not in excess of three thousand dollars within any fiscal year for the purchase of materials and equipment for such programs.