QUINCY EDUCATION ASSOCIATION, INC., & others *vs.* CITY OF
QUINCY & others.

Suffolk. June 1, 1982. — December 24, 1982.

Present: GRANT, BROWN, & DREBEN, JJ.

*School and School Committee,* Budget. *Municipal Corporations,* Munic-
ipal finance.

A city council acted lawfully in rejecting supplemental budget requests by
    the city's school committee to fund collective bargaining agreements
    where, as a result of protracted negotiations, the actual amount of the
    requests, as contrasted with general information that additional funds
    might be needed, was not submitted to the mayor until after the
    mayor's deadline for submission of such requests had passed, and after
    the new municipal tax rate had been set. [69-70]
Where a school committee's delay in submitting supplemental budget
    requests for fiscal year 1980 to fund a collective bargaining contract
    resulted in rejection of the requests and the committee's subsequent in-
    clusion of the salary increases not paid in fiscal year 1980 in its budget
    request for fiscal year 1981, the amounts submitted by the committee
    in the 1981 request, which exceeded 104 percent of the fiscal year 1980
    appropriation, were subject to the "tax cap" provisions of St. 1979,
    c. 151, and were properly reduced by the city council. [70]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on June 11, 1980.

After transfer to the Superior Court Department the case
was reported by *Forte,* J., a District Court judge sitting
under statutory authority.

*Jeffrey M. Freedman* (*Howard G. Zaharoff* with him) for
the plaintiffs.

*James A. Toomey* for School Committee of Quincy.

*Robert J. Fleming,* City Solicitor, for the city of Quincy.

BROWN, J. By this action the plaintiffs, Quincy Educa-
tion Association (the Association) and more than ten taxable
inhabitants of Quincy, challenge the defendant city council's

rejection of the supplemental budget requests of the school committee (also a defendant) for the academic year 1979-1980 (F.Y. 1980) and the reduction by the city council of the committee's request for the academic year 1980-1981 (F.Y. 1981). This case was reported to us for determination without decision by a judge of a District Court sitting in the Superior Court by statutory authority. The record is based on a statement of agreed facts and exhibits.

In March, 1979, the committee submitted its budget of $32,941,860 for F.Y. 1980. Its brief transmittal letter to the mayor included the following statement: "Please note that the budgets do not include any . . . possible additional costs which may result from labor negotiations presently in progress . . . ." The budget summary itself contained a similar notation. This budget was some $358,000 less than the budget for F.Y. 1979. On June 14, 1979, the city council voted to appropriate the $32,941,860 requested. On July 16, the committee "informed the [m]ayor [who was chairman of the committee] that it planned to submit a request for additional funding for collective bargaining agreements . . . ." Two agreements already had been negotiated, while four were pending. At this time, the "[c]ommittee requested that the [m]ayor provide it with a deadline date . . . to submit the additional budget request in sufficient time to include the requested amount in the 1979-80 tax rate." On September 17, 1979, the committee submitted a supplemental budget to the mayor to fund the already negotiated agreements. (The Association's was not among these.) The mayor responded that the committee should fund the agreements from its existing budget. Ten days later the committee requested that the city tax rate not be set until it could determine the effect of the mayor's request. In early November, "in anticipation of the setting of the city tax rate," the committee informed the mayor that it would be requesting a supplementary budget of between $915,000 and $1,875,000. This amount was to cover concluded agreements and increased utility costs. On November 15, the committee voted to submit such a budget for $1,875,000.

The mayor "acknowledged receipt of" the letter.  A subsequent letter to him was not answered in writing.

On December 11 the city tax rate was set.  On December 12 the Association and the Committee "executed a new three-year collective bargaining agreement" which set forth the following pay raises:  F.Y. 1980 — 5%; F.Y. 1981 — 5%; F.Y. 1982 — 7%.  On December 17 the Committee submitted a second request for the supplemental budget, plus a request for $1,075,000 to meet the costs of the agreement with the Association.  The mayor did not respond to this request; however, eventually the mayor, pursuant to an order of court, submitted a supplemental budget of $1,434,604.[1]  The budget plus this request would have been less than 104 percent of the prior year's appropriations. (See St. 1979, c. 151, the so-called "tax cap" statute.)  On June 2, 1980, the city council rejected the supplemental appropriation by a vote of five to two.

The committee's request for F.Y. 1981 was $36,811,207.  That amount exceeded 104% of the F.Y. 1980 appropriation and, consequently, the city council reduced the request to $32,344,111.  This was the F.Y. 1980 appropriation plus four percent.  "As a result of the rejection of the committee's supplemental budget request," the increases not paid in F.Y. 1980 "were to be included in the committee's" F.Y. 1981 budget and were to be paid in 1981.  The inclusion of these funds, however, caused the request to exceed the 104 percent "tax cap."  (Had the five percent increase for F.Y. 1980 been included in that year's budget *neither* budget would have exceeded the cap.)  There was no showing of any party's bad faith in the relevant negotiations.[2]

---

[1] After several intervening actions, the mayor was ordered by a judge of the Superior Court to submit the entire requested supplementary appropriation to the city council.  A single justice of this court refused to stay the portion of the order pertaining to the funding for the collective bargaining agreements.

[2] The briefs and arguments of counsel show that the following items, though not included in the statement of facts, are not disputed:  As a result of the reduction of the committee's request by more than $4,750,000,

1. The city's contention that the question of the late supplemental request is governed by *Young* v. *Worcester,* 333 Mass. 724 (1956), is essentially correct. In that case, the Supreme Judicial Court held (at 728) that "estimates from the school committee," including supplemental ones, "must all be in the executive's hands by the time he brings into existence the recommended annual budget by submitting it to the city council." In so holding, the court upheld the city council's refusal to fund the untimely request for a salary increase for the superintendent of schools which the school committee had adopted subsequent to its budget submission to the city manager and his submission of that request to the city council. The plaintiffs attempt to distinguish the *Young* case on several grounds.

First, the committee notified the mayor in advance that additional funds might be needed to fund new agreements. Although this was a good faith effort to keep the mayor informed, it was not sufficient and did not meet the *Young* requirement that *estimates* (as opposed to "possible additional costs") must be in the executive's hands. The November requests also were too imprecise, late, or both.

Second, the plaintiffs note correctly that the *Young* case "does not establish an inflexible rule." The court there states (at 729) that "[i]t appears likely that practices of reasonable accommodation to mutual convenience will evolve . . . and we leave a more precise statement as to timeliness to the particular case wherein it may be required . . . ." This court applied the flexible *Young* guidelines in *Carroll* v. *Malden,* 2 Mass. App. Ct. 735, 739-740 (1974). In that case, the school committee's budget was presented to the mayor one week before he was required to submit his budget to the city council. (The delay was found not to be due to protracted labor negotiations.) The court held (at 740) that in the absence of "more precise criteria to guide us

---

programs have been cut and teachers fired. The remaining teachers were paid the five percent increase in F.Y. 1981 and seven percent in F.Y. 1982. The F.Y. 1980 pay raise was never paid.

on the question of timeliness, we do not conclude that the committee's submission of the budget was so late that it precluded adequate consideration by the mayor before the deadline." However much flexibility is envisioned by the *Young* and *Carroll* cases, no reading of them can lead to a requirement that the city council approve a supplemental budget request months after the mayor's deadline and after the new tax rate has been set.

Third, the plaintiffs contend that the *Young* case should not be applied where public sector collective bargaining (see G. L. c. 150E) is involved. Although protracted bargaining does involve new problems not specifically discussed in *Young,* we do not believe that the setting of a city's tax rate must await the conclusion of all ongoing negotiations or require the disclosure by the committee of the amount it expects to spend to fund the new contracts. The plaintiffs' last argument requires a strained interpretation of the relevant statutes which we decline to adopt. See generally *Mayor of Holyoke* v. *Aldermen of Holyoke,* 381 Mass. 708, 708-709 (1980).

2. Given the resolution of the F.Y. 1980 issue, the unsupported arguments of the plaintiffs concerning the tax cap statute and the F.Y. 1981 budget request must fail. The amounts submitted by the school committee in the F.Y. 1981 appropriation to recoup the 1980 pay raise were validly subject to the tax cap statute, St. 1979, c. 151. Cf. *Callahan* v. *Woburn,* 306 Mass. 265, 277 (1940). See also *Boston Teachers Union Local 66* v. *School Comm. of Boston,* 386 Mass. 197, 208 (1982). Nor in this instance are the plaintiffs able to circumvent the lack of an actionable deficiency on which to ground a ten-taxpayer suit by resorting to individual contract actions. *Callahan* v. *Woburn, supra* at 273-278.

3. The case is remanded to the Superior Court for entry of judgment for the defendants.

*So ordered.*